08-4840-ag
Thompson v. Holder
07-3796-ag
Luna v. Holder

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: June 15, 2010                                    Decided: March 3, 2011)


Docket Nos. 07-3796-ag, 08-4840-ag
_____


WORKLIS LUNA,

*Petitioner*,

v.

ERIC H. HOLDER, JR., United States Attorney General,

*Respondent*.

_____

TASMANN ANTHONY THOMPSON,

*Petitioner*,

v.

ERIC H. HOLDER, JR., United States Attorney General,[*]

*Respondent*.

_____

CALABRESI, POOLER, and CHIN, *Circuit Judges.*

_____

_____

[*] Eric H. Holder, Jr., is automatically substituted as the respondent in both of the above-captioned cases pursuant to Federal Rule of Appellate Procedure 43(c)(2).

The sole and exclusive means for challenging a final order of removal is to file a petition for review in a federal court of appeals. If a petition for review is filed more than 30 days after the order of removal, the court of appeals lacks jurisdiction over the petition. Here, Worklis Luna and Tasmann Anthony Thompson filed petitions for review after the 30-day deadline, alleging that their constitutional rights were violated because they were prevented from filing timely petitions by ineffective assistance of counsel and governmental interference, respectively. Petitioners argue that the 30-day filing requirement, as applied to them, would violate the Suspension Clause if it barred them from raising their constitutional claims through a petition for a writ of habeas corpus or an adequate and effective substitute. We hold that applying the 30-day filing deadline to Petitioners does not violate the Suspension Clause because the statutory motion to reopen process as described herein is an adequate and effective substitute for habeas review. We reach that conclusion based on our further holdings that (1) the statutory motion to reopen process cannot be unilaterally terminated by the Government and (2) agency denials are subject to meaningful judicial review. Accordingly, we dismiss as untimely Petitioners' petitions for review.

WORKLIS LUNA, *pro se*.

TASMANN ANTHONY THOMPSON, *pro se*.

CAROL FEDERIGHI, JENNIFER R. KHOURI, and BRENDEN P. HOGAN, Office of Immigration Litigation, U.S. Department of Justice, *for* Respondent.

JENNIFER CHANG NEWELL (Lee Gelernt and Tanaz Moghadam, *on the brief*), American Civil Liberties Union, *for* Amicus Curiae American Civil Liberties Union.

POOLER, *Circuit Judge*:

The sole and exclusive means for challenging a final order of removal is to file a petition for review in a federal court of appeals. If a petition for review is filed more than 30 days after the order of removal, the court of appeals lacks jurisdiction over the petition. Here, Worklis Luna and Tasmann Anthony Thompson filed petitions for review after the 30-day deadline, alleging that their constitutional rights were violated because they were prevented from filing timely petitions by ineffective assistance of counsel and governmental interference, respectively. Petitioners argue that the 30-day filing requirement, as applied to them, would violate the Suspension Clause if it barred them from raising their constitutional claims through a petition for a writ of habeas corpus or an adequate and effective substitute.

We note at the outset that the petitions before us raise important and difficult issues. On the one hand, Luna and Thompson claim that their efforts to challenge their removal orders have been impeded by the deprivation of their constitutional rights, including the right to due process under the Fifth Amendment. Luna, Thompson, and others like them cannot be left with no forum in which to raise plausible claims of constitutional violations. Hence, the possible foreclosure of habeas relief at issue here raises legitimate Suspension Clause concerns. On the other hand, permitting aliens to assert these claims through habeas may allow those with frivolous claims to delay their removals and inappropriately clog the judicial system. Indeed, in its treatment of habeas and its substitutes, Congress has expressed concern about the abuse of the habeas procedure. In approaching Luna and Thompson's petitions, we have had these two conflicting points very much in mind. In view of the Government's concessions and the

-3-

structure of the process, we believe that the statutory motion to reopen process before the Board of Immigration Appeals (the "BIA"), subject to de novo review of legal issues and with equitable tolling and the removal of the departure bar, permits the BIA to readily sort frivolous claims from those deserving a day in court, thus vindicating both values to the fullest extent possible.

We hold that applying the 30-day filing deadline to Petitioners does not violate the Suspension Clause because the statutory motion to reopen process as described herein is an adequate and effective substitute for habeas review. We reach that conclusion based on our further holdings that (1) the statutory motion to reopen process cannot be unilaterally terminated by the Government and (2) agency denials are subject to meaningful judicial review. Accordingly, we dismiss as untimely Petitioners' petitions for review.

## I.

## A.

In September 2007, Thompson, a native and citizen of Jamaica, was charged in a Notice to Appear with removability pursuant to the Immigration and Nationality Act (the "INA") Section 237(a)(2)(A)(ii), based on his convictions for two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and Section 237(a)(2)(A)(iii), based on his conviction for an aggravated felony. Thompson, appearing pro se before an immigration judge ("IJ") in Hartford, Connecticut, requested that the IJ appoint counsel because "this matter has become complex and the respondent never attended any law school, nor is he an attorney." In January 2008, the IJ found him removable on the aggravated felony charge and ordered him removed to Jamaica. Thompson appealed to the BIA, asserting that he was denied his right to counsel and that he was innocent of the crimes underlying his convictions. The BIA dismissed

his appeal on April 28, 2008. On August 18, 2008, Thompson filed a motion to reopen, seeking protection under the Convention Against Torture (the "CAT"). On September 9, 2008, the BIA denied Thompson's motion to reopen, concluding that Thompson had failed to establish a prima facie case for protection under the CAT. **[*Id.* at 1-2]**

On October 1, 2008, Thompson filed in this Court a "motion asking for time to appeal" the BIA's April 28, 2008 order. The motion was docketed in this Court as a petition for review. Thompson stated that when the BIA dismissed his appeal, he was detained in the Wyatt Detention Facility in Central Falls, Rhode Island and was "unable to get [his] legal documents at this facility[.] ITS [sic] PROHIBITED." In response, the Government filed a motion to dismiss the petition for review as untimely.

In March 2009, this Court learned that the Government had removed Thompson to Jamaica. Two months later, the Government acknowledged that this Court retains jurisdiction over the petition despite Thompson's removal. *See Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009) ("Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal."). The Government, however, maintained that the petition should be dismissed as untimely.

**B.**

In December 2006, Luna, a native of the Dominican Republic, was charged in a Notice to Appear with removability pursuant to INA Section 237(a)(2)(B)(i), based on his conviction for a controlled substance violation, and Section 237(a)(2)(A)(iii), based on his conviction for an aggravated felony. In a hearing before an IJ in Napanoch, New York, Luna, appearing pro se,

argued that he was not removable under Section 237 of the INA because he was a citizen of the United States. Luna argued that he was a dual citizen of the Dominican Republic and the United States, and that he had derivative U.S. citizenship based on his father's naturalization. In May 2007, the IJ determined that Luna had not derived U.S. citizenship from his father, that his removability had been established by clear and convincing evidence, that he was statutorily ineligible for various forms of relief, and that he had not established a prima facie claim for deferral of removal under the CAT. Accordingly, the IJ ordered Luna removed to the Dominican Republic. Luna, detained at the Buffalo Federal Detention Facility in Batavia, New York, appealed to the BIA through counsel. By an order issued July 20, 2007, the BIA dismissed Luna's appeal.

On August 9, 2007, Luna's attorney sent a letter to Luna's mother, stating that he did not believe that he could make an argument in a petition for review that would warrant reversal of the BIA's decision. Luna's attorney also stated that the deadline for filing a petition for review was August 20, 2007. However, Luna stated that his attorney did not send him a letter and he did not receive the letter the attorney sent to his mother until August 25, 2007 – five days after the filing deadline. Nor, Luna says, did his attorney otherwise inform him that he would not file a petition for review. On September 5, 2007, sixteen days after the filing deadline and eleven days after allegedly receiving his attorney's letter, Luna, pro se, petitioned for review of the BIA's decision. Luna sought "an enlargement of time to file a petition for review" because of his former attorney's "neglect, sudden loss of interest, and giving [Luna the] false impression that he would submit all the necessary papers and continue to represent [Luna]." The government moved to dismiss the petition for review as untimely. In response, Luna submitted

his former attorney's August 9 letter to his mother and asserted that "prior counsel['s] lack of proper communication kept petitioner from filing his petition on time." Luna argued that he "should have been notified by counsel at his place of detention to make sure that [he] received the correspondence in a timely manner, which would [have] allow[ed him] to file his petition within the thirty-day filing deadline."

## C.

In February and August 2009, another panel of this Court ordered the appointment of pro bono counsel as amicus curiae and directed briefing on the following issue:

> [W]hether there is merit to an as-applied Suspension Clause challenge for a petitioner who lacked any reasonable opportunity to file a petition for review during the 30-day filing period because of circumstances created by the government, or because of attorney error, in light of our opinion in *Ruiz-Martinez v. Mukasey*, 516 F.3d 102 (2008).

The American Civil Liberties Union's ("ACLU") Immigrants' Rights Project was subsequently appointed as amicus counsel in both appeals.

In its briefs to the Court, the ACLU argued that the 30-day filing deadline would violate the Suspension Clause if it barred Petitioners from filing a writ of habeas corpus or seeking adequate and effective relief.

In response, the Government argued that the 30-day deadline to file a petition for review, as applied to Luna and Thompson, did not raise Suspension Clause concerns because the motion to reopen process offers constitutionally adequate review. The Government stated that "an alien has a 'statutory right' to file . . . a motion [to reopen]" with the BIA after a final order of removal is issued. The noncitizen specifically would ask the BIA to reopen proceedings and determine

-7-

whether ineffective assistance or governmental interference prevented the noncitizen from filing a timely petition for review. If so, the BIA would reissue the final order of removal, providing the noncitizen 30 days from that date to petition for review of the merits of the removal order. If the BIA denied the motion to reopen, the noncitizen could file a petition for review within 30 days. The Government stated that "the Court's review of a reopening denial entails *de novo* review of any legal (including constitutional) conclusions." This Court, the Government concluded (before later "amending" its position), could order the BIA to reissue the final order of removal if it found that the BIA erroneously denied the motion to reopen.

The ACLU agreed in large part with this approach but argued that, for the motion to reopen process to be an adequate substitute, (1) the BIA must have the authority to hear such motions regarding ineffective assistance and governmental interference; (2) removal of a noncitizen must not terminate such motions; (3) the BIA must not be able to insulate its denial of a motion to reopen from de novo judicial scrutiny by styling it as discretionary; and (4) noncitizens should be eligible for equitable tolling when government-created circumstances prevent them from timely filing a petition for review.

**D.**

On September 3, 2010, this Court issued an opinion holding that the 30-day deadline did not violate the Suspension Clause as applied to Petitioners. We held that the REAL ID Act of 2005 did not withdraw habeas jurisdiction over Petitioners' claims that they were prevented from filing a timely petition for review by ineffective assistance of counsel or governmental interference. We transferred the petitions to the district courts in which Petitioners' removal

proceedings were completed and stayed Luna's removal pending the receipt of his habeas petition in district court.

Significantly, in the September 3 opinion, this Court rejected the motion to reopen process as an adequate and effective substitute for habeas. First, we stated that "[t]he granting of a stay is discretionary, 8 C.F.R. § 1003.2(f), and [a] motion to reopen is automatically terminated if the alien is removed while the motion is pending, *id.* § 1003.2(d)." Slip Op. at 10 n.4 (citing *Xue Yong Zhang v. Holder*, 617 F.3d 650, 660 (2d Cir. 2010)). We held that "[a] procedure that allows the government to unilaterally terminate a petitioner's claim for relief at any time" is not an adequate and effective substitute. *Id.* (citing *Boumediene v. Bush*, 553 U.S. 723, 765-66 (2008)). Second, we stated that "[t]he BIA's decision to grant a motion to reopen is purely discretionary." *Id.* (quoting *Burger v. Gonzales*, 498 F.3d 131, 135 (2d Cir. 2007) (internal quotation marks omitted)). We held that "[a] mechanism for review that 'is a wholly discretionary one' is 'an insufficient replacement' for habeas." *Id.* (quoting *Boumediene*, 553 U.S. at 791-92).

We concluded:

> If a petition for review is the "sole and exclusive means" for petitioners to make their claims regarding the timeliness of their petitions for review, and if we are jurisdictionally barred from considering such claims because of the 30-day filing requirement, then we would have to decide whether the 30-day deadline, as applied to petitioners, would constitute a suspension of the writ of habeas corpus. Because we conclude that the REAL ID Act can be construed to preserve habeas jurisdiction over petitioners' claims, however, we need not decide that question.

Slip Op. at 11-12.

Shortly after the opinion was issued, we granted the Government's request to recall the mandate, ordered the opinion to be withdrawn, and requested supplemental briefing on whether the statutory motion to reopen process is an adequate and effective substitute for habeas. Our September 3 opinion failed to analyze the statutory motion to reopen process, which is part of the Immigration and Nationality Act ("INA"). Rather, it referred only to the sua sponte motion to reopen process, which is "a creature of regulations promulgated by the Attorney General." *Xue Yong Zhang*, 617 F.3d at 664. The Government argued that the September 3 opinion "ignore[d] that an alien has a 'statutory right' to file [a motion to reopen]." Further, the Government stated that "the Court's review of a reopening denial entails *de novo* review of any legal (including constitutional) conclusions." As explained below, we agree with the Government on these two points. Further, we adhere to our previous holding that "[i]f petitioners lack a forum in which to raise such [ineffective assistance of counsel and government interference] claims, then we are confronted squarely with the 'serious constitutional questions' raised by the Supreme Court in [*INS v.*] *St. Cyr*, [533 U.S. 289, 315 (2001)]." Slip Op. at 11. Therefore, we must decide whether the statutory motion to reopen process is an adequate and effective substitute for habeas.

## II.

As an initial matter, the Government requests that we deny Petitioners' petitions for review on futility grounds. The Government asserts that we need not decide whether the 30-day filing requirement, as applied, violates the Suspension Clause because even if Petitioners file timely petitions for review of their final orders of removal, such petitions would be futile. The Government argues that Petitioners would be unable to raise in a timely petition for review a colorable issue over which this Court has jurisdiction.

-10-

Dismissal on futility grounds is appropriate only if "there is no realistic possibility" of success. *See, e.g.*, *Alam v. Gonzales*, 438 F.3d 184, 187 (2d Cir. 2006) (quoting *Cao He Lin v. U.S. DOJ*, 428 F.3d 391, 401 (2d Cir. 2005)). We will not "'convert judicial review of agency action into a ping-pong game'" if we are certain that further action "'would be an idle and useless formality.'" *Id.* (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)). Nor, however, will we prevent a petitioner from filing a petition for review that has a "realistic *possibility*" of success, even if we believe the *probability* of success is slight. If a petitioner has a plausible claim for relief, dismissal on futility grounds is inappropriate.

Here, both Petitioners are aggravated felons. Therefore, in a petition for review challenging Petitioners' final orders of removal, we would have jurisdiction to consider only "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(C)-(D). Petitioners, who currently are seeking the opportunity to file such a petition, have not yet detailed the claims they would raise in a petition for review. Nor is it their burden to inform us of such claims in advance. Because the Government raises the futility argument, it is the Government's burden to show that "there is no realistic possibility" that Petitioners could gain relief via a petition for review. *See Alam*, 438 F.3d at 187. Petitioners, of course, may seek to rebut the Government's futility argument by describing the claims they could bring in a subsequent petition for review, but they are not required to do so.

We conclude that neither Thompson nor Luna lacks any realistic possibility of gaining relief from a timely petition for review. Thompson preserved his right to argue that, in this case, he was denied a right to counsel under the Fifth Amendment's Due Process Clause. He raised the issue before and during his IJ hearing and raised the issue on appeal to the BIA. Thompson argued that he "wouldn't be able to represent himself pro-se in [this] matter" because "this

-11-

matter has become complex and [he] never attended any law school, nor is he an attorney." Although a person in removal proceedings enjoys a right to due process under the Fifth Amendment, *see, e.g.*, *Jian Yun Zheng v. U.S. DOJ*, 409 F.3d 43, 46 (2d Cir. 2005), our case law leaves open whether there are some circumstances in which such a right is violated when the person's request for appointed counsel in a removal proceeding is denied. Although we do not know what specific arguments Thompson believes a lawyer could have made that would have raised doubt about the propriety of finding him removable as an aggravated felon, at this stage of the litigation it remains the Government's burden to convince us that no arguments with a realistic possibility of success exist. The Government failed to meet this burden. In sum, we have jurisdiction to review such a Fifth Amendment due process claim under Section 1252(a)(2)(D) and, on the facts of Thompson's case, we cannot conclude that "there is no realistic possibility" that this claim would succeed.

Likewise, Luna does not lack any realistic possibility of success via a petition for review. Luna, appearing pro se before the IJ, argued that he was a citizen through the naturalization of his father. However, for his appeal to the BIA Luna hired an attorney who failed to raise this argument. As we have held, "in order to preserve an issue for review by this Court, the petitioner must not only raise it before the BIA, but do so with specificity." *Brito v. Mukasey*, 521 F.3d 160, 164 (2d Cir. 2008). Luna did not exhaust review of that issue. However, we do not lack jurisdiction to hear such arguments and may hear them if the Government does not raise an exhaustion defense. *Lin Zhong v. U.S. DOJ*, 480 F.3d 104, 120 (2d Cir. 2007). Thus far, the Government has not raised the issue. In addition, given his attorney's conduct, Luna has a plausible claim that his counsel was ineffective during the BIA proceedings, which is a question that we have jurisdiction to review in a petition to review. Luna, of course, would need to raise

that argument with the BIA and fulfill the requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (B.I.A. 1988), but we need not decide whether the BIA would deny equitable tolling to raise the ineffectiveness issue, because Luna has a plausible argument that he was diligent. Forty-six days after the final order of removal (and 11 days after allegedly learning his attorney would not appeal), Luna filed a petition to appeal based on his counsel's ineffective assistance. Under these circumstances, we cannot conclude that "there is no realistic possibility" that Luna would succeed in a petition for review challenging his final order of removal.

In sum, we reject the Government's request that we deny Petitioners' petitions for review on futility grounds. Therefore, we proceed to determine whether the 30-day deadline for filing a petition for review violates the Suspension Clause as applied to Petitioners.

### III.

Under the INA, "[a] petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). This 30-day filing requirement "is jurisdictional and is not subject to equitable tolling." *Ruiz-Martinez*, 516 F.3d at 105-06 (citing *Malvoisin v. INS*, 268 F.3d 74, 75-76 (2d Cir. 2001)). In addition, a petition for review is the exclusive means available for challenging a final order of removal. 8 U.S.C. § 1252(a)(5), (b)(9). In *Ruiz-Martinez*, we held that the provisions of the REAL ID Act eliminating habeas jurisdiction over final orders of removal, combined with the 30-day deadline, did not facially violate the Suspension Clause of the U.S. Constitution. 516 F.3d at 105-06. We reasoned that the 30-day period gave aliens a "reasonable opportunity" to seek judicial review and thus we concluded that the petition to review process was an adequate and effective substitute for habeas review. *Id.* at 105-06, 114-17.

-13-

However, *Ruiz-Martinez* did not rule out the possibility that the 30-day deadline could amount to a suspension of the writ as applied to an individual petitioner. Here, Petitioners, who filed untimely petitions for review, argue that the 30-day filing requirement violates the Suspension Clause when a petitioner misses the deadline because of ineffective assistance of counsel or governmental interference. In these circumstances, Petitioners contend, there is no reasonable opportunity to seek meaningful judicial review.

**IV.**

The Suspension Clause of the U.S. Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. "Because of that Clause, some judicial intervention in deportation cases is unquestionably required by the Constitution." *St. Cyr*, 533 U.S. at 300 (internal quotation marks omitted). However, "'the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus.'" *Ruiz-Martinez*, 516 F.3d at 114 (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977)); *Boumediene*, 553 U.S. at 771 ("[T]he question becomes whether the statute stripping jurisdiction to issue the writ avoids the Suspension Clause mandate because Congress has provided adequate substitute procedures for habeas corpus.").

Prior to 1996, an alien could challenge a removal order either in a petition for review filed in the court of appeals or in a petition for a writ of habeas corpus in the district court. *See Ruiz-Martinez*, 516 F.3d at 113. Since then, Congress has channeled review of final orders of removal into the courts of appeals. In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigration

-14-

Responsibility Act ("IIRIRA"), both of which amended the jurisdictional provisions of the INA, 8 U.S.C. §§ 1101 *et seq*. Among other changes, AEDPA repealed an earlier provision of the INA that stated that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings," § 1105a(a)(10) (1994) (repealed 1996). IIRIRA provided for judicial review of orders of removal, § 1252(a)(1) (2000), and, rejecting the existing dual tracks of review of orders of removal in habeas courts and courts of appeals, consolidated all "[j]udicial review of all questions of law and fact . . . arising from" removal proceedings into one action, a petition for review in the courts of appeals, § 1252(b)(9) (2000). IIRIRA required that a petition for review be filed within 30 days after the date of the final order of removal. § 1252(b)(1) (2000). Finally, IIRIRA eliminated judicial review of final orders of removal against noncitizens convicted of certain criminal offenses, including aggravated felonies. § 1252(a)(2)(C) (2000).

Shortly thereafter, a noncitizen found removable by the BIA because of his conviction for an aggravated felony filed a habeas petition in the District of Connecticut, raising a purely legal question regarding the impact of AEDPA and IIRIRA on conduct that occurred before their enactment. *St. Cyr*, 533 U.S. at 292-93. The Government argued that AEDPA and IIRIRA properly divested the district court of jurisdiction to hear the noncitizen's habeas petition. The district court, this Court, and the Supreme Court found otherwise. *See id.* at 293. Reviewing the historical use of habeas, the Supreme Court found that pure questions of law were within the scope of habeas review. *Id.* at 304-05. Thus, "a serious Suspension Clause issue would be presented if [AEDPA and IIRIRA] withdr[ew] that power from federal judges and provided no adequate substitute for its exercise." *Id.* at 305. To avoid that serious constitutional question, the Supreme Court, relying on "the longstanding rule requiring a clear statement of

-15-

congressional intent to repeal habeas jurisdiction," *id.* at 298, held that neither AEDPA nor

IIRIRA had eliminated habeas corpus review over final orders of removal under 28 U.S.C.

§ 2241, *id.* at 314. The Court noted that "[i]f it were clear that the question of law could be

answered in another judicial forum," it might accept the Government's argument that habeas

review was not available. *Id.*

While the Supreme Court in *St. Cyr* did not define the exact scope of constitutional

protection required, it said that "at the absolute minimum, the Suspension Clause protects the

writ [of habeas corpus] 'as it existed in 1789.'" *Id.* at 301 (quoting *Felker v. Turpin*, 518 U.S.

651, 663-64 (1996) (footnote omitted)). The Supreme Court did not limit its historical review of

the scope of habeas jurisdiction to issues of statutory construction, but stated that such review

traditionally "encompassed detentions based on errors of law, including the erroneous

application or interpretation of statutes," *id.* at 302, challenges to "Executive interpretations of

the immigration laws," *id.* at 307, determinations of an alien's "statutory eligibility for

discretionary relief," *id.* at 314 n.38, and "questions of law that arose in the context of

discretionary relief," *id.* at 307. *See Xiao Ji Chen v. U.S. DOJ*, 471 F.3d 315, 327-28 (2d Cir.

2006). Further, the Supreme Court relied in part on a habeas corpus case that "involved the

application and interpretation of a regulation, not a statute." *Id.* (citing *United States ex rel.*

*Accardi v. Shaughnessy*, 347 U.S. 260, 265-68 (1954)) (emphasis omitted).

In response to the Supreme Court's decision in *St. Cyr*, Congress passed the REAL ID

Act, again channeling review of removal orders into the courts of appeals. With this Act,

"Congress intended to provide a scheme of judicial review which is an adequate and effective

substitute for habeas corpus." *Id.* at 326 (brackets and quotation marks omitted). The Act

explicitly precluded habeas review of most orders of removal. However, to avoid the "serious

constitutional questions" identified by the Supreme Court in *St. Cyr*, the Act restored judicial review in the courts of appeals over "constitutional claims or questions of law" for all noncitizens, including noncitizen criminals who had been barred from seeking judicial review under IIRIRA.  8 U.S.C. § 1252(a)(2)(D).

This Court has construed "the intent of Congress's restoration under the REAL ID Act rubric of 'constitutional claims or questions of law' to encompass the same types of issues that courts traditionally exercised in habeas review over Executive detentions." *Xiao Ji Chen*, 471 F.3d at 326-27.  As before, "where no jurisdiction-denying provision of the INA is implicated, a reviewing court . . . [is] presumed to have the authority to consider *all* questions of law and fact, including interpretation and application of constitutional and statutory provisions in reviewing a final order of removal." *Id.* at 330 n.8 (emphasis in original) (citations and internal quotation marks omitted).

## V.

## A.

Petitioners raise precisely the types of constitutional claims for which habeas review, or an adequate and effective substitute, is most essential.  Luna and Thompson allege that they were deprived of their right to fundamental fairness under the Due Process Clause of the Fifth Amendment.  Luna alleges that his counsel prevented him from filing a timely petition for review and argues that his counsel's conduct was so ineffective that it impinged on the fundamental fairness of the removal proceeding.  *See, e.g.*, *Omar v. Mukasey*, 517 F.3d 647, 650 (2d Cir. 2008); *United States v. Perez*, 330 F.3d 97, 101-02 (2d Cir. 2003).  Likewise, Thompson alleges that the government prevented him from filing a timely petition for review, also

impinging on the fundamental fairness of the proceeding. *See Boumediene*, 553 U.S. at 765-66 (holding that the writ "must not be subject to manipulation by those whose power it is designed to restrain" (internal quotation marks omitted)); *Bounds v. Smith*, 430 U.S. 817, 822 (1977) ("'[T]he state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus.'" (quoting *Ex parte Hull*, 312 U.S. 546, 549 (1941))).

If Petitioners lack a forum in which to raise such claims, then we are confronted squarely with the "serious constitutional questions" raised by the Supreme Court in *St. Cyr*, 533 U.S. at 314. However, because we conclude that Congress has provided an adequate and effective substitute for habeas, the 30-day deadline, as applied to Petitioners, does not violate the Suspension Clause. *Cf. Singh v. Gonzales*, 499 F.3d 969, 979-80 (9th Cir. 2007) (finding that REAL ID Act, as applied, did not violate Suspension Clause because petitioner could seek habeas relief).

**B.**

The Government argues that by codifying the motion to reopen process, Congress has provided a mechanism by which Petitioners can raise their claims that they were prevented by ineffective assistance or governmental interference from filing timely petitions for review. As the Government emphasizes, the Supreme Court repeatedly has described the motion to reopen process as "an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Kucana v. Holder*, 130 S. Ct. 827, 834 (2010) (quoting *Dada v. Mukasey*, 554 U.S. 1, 18 (2008)).

Before 1996, aliens involved in immigration proceedings could move to reopen their proceedings before the BIA. However, the authority for such motions derived solely from

-18-

regulations promulgated by the Attorney General. The regulations also provided that a noncitizen removed from the United States could not file a motion to reopen, and if a noncitizen was removed from the United States, her motion to reopen would be deemed withdrawn. *See* 8 C.F.R. § 3.2 (predecessor to 8 C.F.R. § 1003.2(d)). This regulation regarding a noncitizen's departure largely paralleled a statutory provision, 8 U.S.C. § 1105a(c) (1962), that barred courts from exercising jurisdiction over immigration orders when the noncitizen had departed the country. In addition, Section 1105a "provid[ed] most aliens with an automatic stay of their removal order while judicial review was pending," so that an alien who challenged an order of removal was "typically entitled to remain in the United States for the duration of judicial review." *Nken*, 129 S. Ct. at 1755 (citing § 1105a(a)(3)).

Congress, by enacting IIRIRA, made two important changes to the existing process. First, Congress codified procedures governing the filing of motions to reopen and provided noncitizens the right to "file one motion to reopen proceedings under this section." 8 U.S.C. § 1229a(c)(7)(A) (originally designated as 8 U.S.C. § 1229a(c)(6)(A)). For example, a noncitizen generally can file only one statutory motion to reopen and generally must do so within 90 days of the final order of removal. § 1229a(c)(7)(A), (C). Those numerosity and timeliness requirements are not jurisdictional and therefore qualify for equitable tolling if the petitioner has been diligent. *E.g.*, *Jin Bo Zhao v. INS*, 452 F.3d 154, 157-60 (2d Cir. 2006) (finding that BIA erred in denying diligent petitioner's motion to reopen as number- and time-barred). Second, Congress acted to "allow for more prompt removal" and to restrict the ability of aliens to remain in this country pending judicial review. *Nken*, 129 S. Ct. at 1755. Congress did so by repealing both the statutory bar to judicial review of removal orders when the noncitizen had departed the country, IIRIRA § 306(b) (repealing 8 U.S.C. § 1105a), and the

-19-

presumption of an automatic stay, *Nken*, 129 S. Ct. at 1755. After IIRIRA, "courts were no longer prohibited from proceeding with review once an alien departed." *Id.*

After Congress enacted IIRIRA, the Attorney General promulgated new regulations. Among the new regulations, the Attorney General provided for sua sponte motions to reopen and imposed a bar to BIA review of motions to reopen when a noncitizen had departed the country. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,321 (Mar. 6, 1997) (discussing departure bar regulation currently at 8 C.F.R. § 1003.2(d)).

This Court, and the Supreme Court, have treated statutory motions to reopen differently from regulatory (i.e., sua sponte) motions to reopen. For example, we have held that Section 1252(a)(2)(B), which eliminates our jurisdiction to review denials of discretionary relief in removal proceedings, applies to regulatory motions to reopen. *Xue Yong Zhang*, 617 F.3d at 663-64. Because such decisions are committed to agency discretion, we lack jurisdiction to review them. However, as this Court and the Supreme Court have held, the same rule does not apply to statutory motions to reopen. *Kucana*, 130 S. Ct. at 840. Decisions on such motions are subject to judicial review via petitions for review under Section 1252. *Id.*; *Jin Bo Zhao*, 452 F.3d at 159; *accord Cruz v. Att'y Gen. of U.S.*, 452 F.3d 240, 246 (3d Cir. 2006) ("Implicit in [the Section 1252(a)(1)] jurisdictional grant is the authority to review the denial of a motion to reopen any such final order.").

Similarly, although this Court found that the Attorney General's departure bar regulation applied to regulatory motions to reopen, *Xue Yong Zhang*, 617 F.3d at 663-64, we have not applied that regulation to statutory motions to reopen, *see id.* at 654 n.2, 664 (explicitly declining to decide whether the departure bar regulation applies to statutory motions to reopen).

## C.

The Government argues that the 30-day filing deadline does not raise Suspension Clause concerns because the statutory motion to reopen process is an adequate and effective substitute for habeas corpus.

## 1.

"At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *St. Cyr*, 533 U.S. at 301. The Supreme Court has been careful "not to foreclose the possibility that the protections of the Suspension Clause have expanded along with post-1789 developments that define the present scope of the writ." *Boumediene*, 553 U.S. at 746 (citing *St. Cyr*, 533 U.S. at 300-01).

As the Supreme Court has stated, it is "uncontroversial" that the writ of habeas corpus allows a detainee "a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Id.* at 779 (quoting *St. Cyr*, 533 U.S. at 302). A habeas court "must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Id.* at 783.

Although the Supreme Court has not comprehensively detailed what makes a substitute for habeas adequate and effective, it has provided guideposts that help us determine this case. First, in the cases in which the Supreme Court has found a substitute to be adequate and effective, "the purpose and effect of the [substitute] was to expedite consideration of the [detainee's] claims, not to delay or frustrate it." *Id.* at 775-76. "When Congress has intended to replace traditional habeas corpus with habeas-like substitutes, . . . it has granted to the courts

broad remedial powers to secure the historic office of the writ." *Id.* at 776-77 (noting that in the Section 2255 context, Congress has granted to the reviewing court power to "determine the issues and make findings of fact and conclusions of law" (internal quotation marks omitted)). If Congress succeeds in creating a procedure that is meaningfully "more limited" than habeas review, *id.* at 778, as measured by "the sum total of procedural protections afforded to the detainee at all stages, direct and collateral," then that procedure is not an adequate replacement for habeas, *id.* at 783. Second, because habeas is "designed to restrain" the Government's power, the scope of the substitute procedure must not be "subject to manipulation" by the Government. *Id.* at 765-66. Third, a mechanism for review that "is wholly a discretionary one" is "an insufficient replacement" for habeas. *Id.* at 791. Fourth, the entity substituting for a habeas court "must have adequate authority . . . to formulate and issue appropriate orders for relief," *id.* at 787, including "the power to order the conditional release of an individual unlawfully detained," *id.* at 779.

Here, the Government argues that the statutory motion to reopen process is an adequate and effective substitute for habeas in the context of a noncitizen's claim that he was prevented from filing a timely petition for review by ineffective assistance of counsel or governmental interference.

In broad strokes, the statutory motion to reopen process is as follows: a noncitizen with such a claim would first file a statutory motion to reopen with the BIA, 8 U.S.C. § 1229a(c)(7), requesting that the BIA reissue the final order of removal in light of the alleged ineffective assistance of counsel or governmental interference. If the BIA does so, the noncitizen has a new 30 days to file in this Court a petition for review of the merits of the removal order. *Lewis v. Holder*, 625 F.3d 65, 68 (2d Cir. 2010) (per curiam). If the BIA does not reissue the removal

-22-

order, the noncitizen has 30 days to petition this Court for review of that decision (but not the merits of the removal order). *See Jin Bo Zhao*, 452 F.3d at 159 (reviewing denial of motion to reopen). If we find no meritorious claim on our review, which will include at least review of "constitutional claims and questions of law," 8 U.S.C. § 1252(a)(2)(D), we will affirm the BIA. If we conclude that the BIA has erred, we may remand or, if appropriate, order the BIA to reissue the final order of removal. After the removal order is reissued, the noncitizen will have 30 days to petition this Court for review of the merits of the removal order. *Lewis*, 625 F.3d at 68.

We believe this process, as more fully described below, provides Petitioners with an adequate and effective substitute for habeas.

**2.**

Amicus counsel, while conceding that a substitute for habeas could resolve Suspension Clause concerns, emphasized that if the statutory motion to reopen procedure is to be an adequate substitute, that process cannot be meaningfully "more limited" than habeas review. *See Boumediene*, 553 U.S. at 778, 783. Amicus counsel worried that the BIA could style its reopening denials as discretionary, eliminating our jurisdiction or reducing our ability "to conduct a meaningful review" of the BIA's decision. *See id.* at 783.

As an initial matter, the BIA has the authority to hear claims that government-created circumstances prevented an alien from filing a timely petition for review. The Government acknowledges that the BIA has the authority to reissue a final order of removal if "the government had impeded Thompson from filing a timely petition for review." Moreover, the Government correctly notes that in *Matter of Compean*, 25 I. & N. Dec. 1, 3 (A.G. 2009), the

Attorney General "reaffirmed his previous determination that the Board [the BIA] had jurisdiction to review ineffective assistance of counsel claims based on attorney conduct subsequent to a final order of removal." We emphasize that this authority, as reflected in *Compean*, is essential to our holding. If the Attorney General later withdraws the BIA's authority to consider claims that ineffective assistance or governmental interference prevented an alien from filing a timely petition for review, then the statutory motion to reopen process would be meaningfully "more limited" than habeas review and therefore an inadequate substitute for habeas.

Although the BIA has authority to consider such claims regarding ineffective assistance and government-created circumstances, the statutory motion to reopen process would not be an adequate substitute for habeas if our review of BIA decisions was meaningfully "more limited" than it would be on habeas. *See Boumediene*, 553 U.S. at 783 (stating that, when determining the adequacy of a habeas substitute, "[w]hat matters is the sum total of procedural protections afforded to the detainee at all stages, direct and collateral"). The Government does not dispute this point. Indeed, the Government concedes that BIA denials of statutory motions to reopen are subject to judicial review to the same extent provided by habeas review.

The Supreme Court has clarified that we have jurisdiction to review denials of statutory motions to reopen, regardless of how the Attorney General styles such decisions. *Kucana*, 130 S. Ct. at 840. In addition, we exercise meaningful review of denials of motions to reopen. In *Xiao Ji Chen*, we noted that Congress passed the REAL ID Act "intend[ing] to provide a scheme of judicial review which is an adequate and effective substitute for habeas corpus." 471 F.3d at 326 (citations and internal quotation marks omitted). Congress's restoration of review of constitutional claims and questions of law encompassed review of "the same types of issues that

-24-

courts traditionally exercised in habeas review over Executive detentions." *Id.* at 326-27. We do not believe that Congress in the INA intended to limit our authority to review constitutional claims or questions of law that a petitioner raises after the BIA denies a motion to reopen. Nothing in the INA supports that interpretation. In fact, the REAL ID Act and its legislative history indicate that Congress intended circuit courts to review "those issues that were historically reviewable on habeas." *Id.* at 327 n.6 (internal quotation marks omitted). As we have stated, "where no jurisdiction-denying provision of the INA is implicated, a reviewing court . . . [is] presumed to have the authority to consider *all* questions of law and fact, including interpretation and application of constitutional and statutory provisions in reviewing a final order of removal." *Id.* at 330 n.8 (internal quotation marks omitted). Indeed, we have exercised review of questions of law and constitutional claims raised in a petition for review of a denied motion to reopen. *E.g.*, *Xue Yong Zhang*, 617 F.3d at 660 (legal error); *Jin Bo Zhao*, 452 F.3d at 159-60 (equitable tolling); *Iavorski v. U.S. INS*, 232 F.3d 124, 128 (2d Cir. 2000) (same). At oral argument and in a Rule 28(j) letter to the Court, the Government acknowledged that we have such authority.

The Government further acknowledged that we review such questions de novo. And we have done so in numerous cases. *E.g.*, *Xue Yong Zhang*, 617 F.3d at 660 (legal error reviewed de novo); *Iavorski*, 232 F.3d at 128 ("We review the BIA's conclusions of law *de novo*." (citing *Mardones v. McElroy*, 197 F.3d 619, 624 (2d Cir. 1999))). In sum, our review of denials of motions to reopen, as Congress intended, "encompass[es] the same types of issues that courts traditionally exercised in habeas review over Executive detentions," *Xiao Ji Chen*, 471 F.3d at 326-27, and the scope of our review, as measured by "the sum total of procedural protections afforded to the detainee," is not meaningfully more limited than habeas review, *Boumediene*, 553

U.S. at 783.

**3.**

For a statutory motion to reopen to be a constitutionally adequate substitute for habeas, it must be available to a diligent petitioner. That is, an alien who was prevented by ineffective assistance of counsel or governmental interference from filing a timely petition for review cannot also be prevented by the same circumstances from filing a statutory motion to reopen.

Although an alien generally may file only one statutory motion to reopen, 8 U.S.C. § 1229a(c)(7)(A), and generally must do so within 90 days of a final order of removal, § 1229a(c)(7)(D)(I), neither requirement is jurisdictional. *Jin Bo Zhao*, 452 F.3d at 157-60; *Iavorski*, 232 F.3d at 132-33. As we have held, "the filing deadline for motions to reopen may be equitably tolled" if the alien "exhibit[s] due diligence in pursuing his claim." *Iavorski*, 232 F.3d at 127. Indeed, we have reversed the BIA when, despite the alien's diligence and plausible showing of ineffective assistance, the BIA found that a motion to reopen was time- and number-barred. *Jin Bo Zhao*, 452 F.3d at 159-60.

In sum, we agree with amicus counsel that for the statutory motion to reopen process to be an adequate substitute for habeas, aliens must be eligible for equitable tolling when ineffective assistance of counsel or governmental interference prevent them from timely filing a petition for review. An alien who files a motion to reopen is entitled to equitable tolling when he exercises due diligence in filing the motion and shows that he was prevented by ineffective assistance of counsel or governmental interference from filing the motion on time. *See id.* If the BIA denies such equitable tolling, the alien may petition this Court for review of that decision. *Id.*

**4.**

For a motion to reopen to be a constitutionally adequate substitute for habeas, it cannot be "subject to manipulation" by the Government. *Boumediene*, 553 U.S. at 765-66. Amicus counsel argues that the statutory motion to reopen process would not be an adequate and effective substitute for habeas if the Government could remove an alien while her motion to reopen was pending and then deem that removal to constitute a "withdrawal" of the motion. In particular, amicus counsel points to the Attorney General's departure bar regulation, which specifies that removal of a person who has filed a motion to reopen "shall constitute a withdrawal of such motion." 8 C.F.R. § 1003.2(d). In response, the Government requests that we not decide this question until, in this context, the BIA dismisses a motion to reopen based on the departure bar. However, we cannot avoid the issue. We have an obligation to determine whether the motion to reopen process is a constitutionally adequate substitute for habeas. *Boumediene*, 553 U.S. at 771; *Ruiz-Martinez*, 516 F.3d at 114.

The BIA has stated that it lacks jurisdiction over motions to reopen when the movant departs the United States. While the Attorney General's departure bar regulation, 8 C.F.R. § 1003.2(d), could be read to apply to only regulatory (sua sponte) reopenings, the BIA has declared, albeit in dicta, that the departure bar regulation deprives the BIA of jurisdiction to consider statutory motions to reopen after the movant's departure from the United States. *Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646, 653-60 (BIA 2008) (criticizing *William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007), for finding that departure bar regulation conflicts with the motion to reopen provision in the INA and therefore the regulation is invalid). We disagree.

As the Supreme Court has held, an administrative agency cannot contract its own jurisdiction either by regulations or decisions in litigated proceedings. *Union Pac. R.R. Co. v.*

*Bhd. of Locomotive Eng'rs*, 130 S. Ct. 584 (2009). The general rule that "when jurisdiction is conferred, a court may not decline to exercise it . . . . also holds for administrative agencies directed by Congress to adjudicate particular controversies." *Id.* at 590 (citation omitted). In *Union Pacific*, the Court found that "Congress vested in the National Railroad Adjustment Board [NRAB] jurisdiction to adjudicate [certain] grievances of railroad employees," *id.*, and that "Congress gave the Board no authority to adopt rules of jurisdictional dimension" regarding the adjudication of such grievances, *id.* at 597. The Court concluded that "[b]y refusing to adjudicate cases on the false premise that it lacked power to hear them, the NRAB panel failed 'to conform, or confine itself,' to the jurisdiction Congress gave it." *Id.* at 599 (quoting 45 U.S.C. § 153 First (q)).

We hold that the BIA may not contract the jurisdiction that Congress gave it by applying the departure bar regulation, 8 C.F.R. § 1003.2(d), as suggested by the BIA in *Armendarez-Mendez*, to statutory motions to reopen. Congress alone controls the BIA's jurisdiction to hear motions to reopen filed under 8 U.S.C. § 1229a(c)(7). *Cf. Union Pac.*, 130 S. Ct. at 590 (discussing authority of NRAB). "The power to establish jurisdictional bars resides with Congress," *Iavorski*, 232 F.3d at 133, and every indication points to the fact that Congress did not intend to create a jurisdictional bar for motions to reopen filed by an alien in the United States who is later removed from the United States. This same logic applies to someone like Thompson who has been removed before filing his motion to reopen.

Congress, by enacting IIRIRA, codified selected regulations regarding the motion to reopen process, providing "the BIA jurisdiction to consider [a] motion [to reopen] if it is filed within ninety days after the removal decision becomes final." *Xue Yong Zhang*, 617 F.3d at 663-64. Congress provided that "[a]n alien may file one motion to reopen proceedings under this

-28-

section," limiting only the period in which to file such motions and the contents of such motions. 8 U.S.C. § 1229a(c)(7) (originally designated as 8 U.S.C. § 1229a(c)(6)). Congress declined to codify the BIA's departure bar regulation that applied to regulatory motions to reopen. *See id.*

Nor did Congress otherwise act to make jurisdiction depend on the alien's presence in the United States. Indeed, IIRIRA repealed the earlier statutory bar to judicial review of removal orders when the alien had departed the country. IIRIRA § 306(b) (repealing 8 U.S.C. § 1105a). In addition, IIRIRA repealed the automatic stay provision. *Nken*, 129 S. Ct. at 1755. With these changes, IIRIRA, which requires the Attorney General to remove aliens subject to a final order of removal within 90 days of the order, 8 U.S.C. § 1231(a)(1)(A), encourages prompt removal and speedy government action, while eliminating prior statutory barriers to pursuing relief from abroad. *See Nken*, 129 S. Ct. at 1755. In this light, an alien's right to file a motion to reopen within 90 days after a final order of removal is not necessarily in tension with the requirement that removal occur within those same 90 days. As in *Iavorski*, which found "no indication, either explicit or implicit, that Congress intended that [the statutory motion to reopen filing deadline be jurisdictional]," 232 F.3d at 130, we find no indication that Congress intended a regulation that it pointedly did not codify to be a jurisdictional bar to statutory motions to reopen.

Nor has Congress indicated since it enacted IIRIRA that an alien's departure after filing a motion to reopen should be a jurisdictional bar. In May 2005, Congress enacted the REAL ID Act. *Ruiz-Martinez*, 516 F.3d at 104-05. With the REAL ID Act, "Congress intended to provide a scheme of judicial review which is an adequate and effective substitute for habeas corpus." *Xiao Ji Chen*, 471 F.3d at 326 (brackets and internal quotation marks omitted); *see also St. Cyr*, 533 U.S. at 299-300 ("[If] 'fairly possible,' we are obligated to construe [a challenged] statute to

avoid [Suspension Clause] problems." (citation omitted)). Although the REAL ID Act repealed or amended other sections of the INA, it maintained an alien's statutory right to file a motion to reopen with the BIA and provided that review of such motions would occur in the courts of appeals. *See Jin Bo Zhao*, 452 F.3d at 159 (reviewing denial of motion to reopen after REAL ID Act). Congress, in enacting the REAL ID Act, provided no indication that an alien's departure after filing a motion to reopen is a jurisdictional bar. In addition, in January 2006, Congress amended Section 1229a to provide relief from the 90-day motion-to-reopen filing deadline for victims of domestic violence. Pub. L. No. 106-386, § 1506(c), 114 Stat. 1464, 1528 (2000). In defining who qualifies for this "[s]pecial rule," Congress required that "the alien [be] physically present in the United States at the time of filing the motion." 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV). For this special rule, Congress explicitly required presence only "at the time of filing the motion," not thereafter, and did not include any requirement of physical presence elsewhere in Section 1229a(c)(7). Congress's choice to include this limitation in only one small subsection makes significant its decision to omit such a requirement from the rest of the law, and we should refrain from reading that limitation into text where Congress has left it out.

In sum, since Congress enacted IIRIRA in 1996, "nothing in the [INA] undergirds a conclusion that the Board [of Immigration Appeals] lacks 'jurisdiction' . . . to issue decisions that affect the legal rights of departed aliens." *Marin-Rodriguez v. Holder*, 612 F.3d 591, 594 (7th Cir. 2010) (citation omitted). Because the BIA's departure bar regulation "has no roots in any statutory source and misapprehends the authority delegated to the Board by Congress," the BIA must consider an alien's motion to reopen even if the alien is no longer in the United States. *Pruidze v. Holder*, No. 09-3836, --- F.3d ---, 2011 WL 320726, at *1, *3-5 (6th Cir. Feb. 3, 2011). The BIA must exercise its full jurisdiction to adjudicate a statutory motion to reopen by

an alien who is removed or otherwise departs the United States before or after filing the motion.

We decline to decide the validity of the departure bar regulation, 8 C.F.R. § 1003.2(d), in every possible context. *Compare William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007) (invalidating 8 C.F.R. § 1003.2(d) in its entirety), *and Coyt v. Holder*, 593 F.3d 902, 907 (9th Cir. 2010) (finding § 1003.2(d) inapplicable to involuntary removals), *with Rosillo-Puga v. Holder*, 580 F.3d 1147 (10th Cir. 2009) (upholding § 1003.2(d) in context of a regulatory motion to reopen), *and Ovalles v. Holder*, 577 F.3d 288, 295-96 (5th Cir. 2009) (same). Indeed, as this Court has held, the departure bar regulation terminates a request for which "there was no statutory basis," as when the BIA exercises its regulatory (i.e., sua sponte) authority to reopen a removal proceeding. *Xue Yong Zhang*, 617 F.3d at 661, 663-64 (noting that the Seventh Circuit's "analysis in *Marin-Rodriguez* does not conflict with ours" because "the BIA's understanding of the departure bar as a limitation on its *sua sponte* jurisdiction, as opposed to its jurisdiction to consider timely motions to reopen under the INA, cannot be said to be 'untenable'").

In sum, the Government's power to remove aliens subject to a final order of removal does not make the motion to reopen process "subject to manipulation" by the Government. The BIA retains jurisdiction over such motions, *Marin-Rodriguez*, 612 F.3d at 593-94; *Pruidze*, 2011 WL 320726 at *3-4, and we retain jurisdiction over resulting appeals, if timely, *Xue Yong Zhang*, 617 F.3d at 657. However, we cannot contemplate every way in which the motion to reopen process might operate in the future. We emphasize that because the writ of habeas corpus is "designed to restrain" the Government's power, the Government must ensure that the motion to reopen process remains an adequate and effective substitute for habeas. *See Boumediene*, 553 U.S. at 765-66.

**5.**

Although the BIA cannot contract its jurisdiction to hear statutory motions to reopen, *see supra* Section V.C.4, such a mechanism for review would be "an insufficient replacement" for habeas if it were "wholly a discretionary" mechanism, *Boumediene*, 553 U.S. at 791. Statutory motions to reopen, however, are authorized by the INA and are not wholly discretionary. 8 U.S.C. § 1229a(c)(7)(A). The statutory motion to reopen process is "an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Kucana*, 130 S. Ct. at 834 (quoting *Dada*, 554 U.S. at 18).

On petitions for review of denied motions to reopen, we review de novo constitutional claims and questions of law. *See supra* Section V.C.2. In addition, a failure to consider facts relevant to the motion to reopen is, as a matter of law, reversible error. *Ping Chen v. U.S. Att'y Gen.*, 502 F.3d 73, 75 (2d Cir. 2007) (per curiam). Further, in motion-to-reopen appeals that do not fall within the REAL ID Act's jurisdiction-stripping provisions, we review the factfinding below for abuse of discretion. *Iavorski*, 232 F.3d at 128. Although statements in some of our cases mention only the abuse of discretion standard, *see, e.g.*, *Jian Yun Zheng v. U.S. DOJ*, 409 F.3d 43, 45 (2d Cir. 2005), the Government is correct that the abuse of discretion standard applies to our review of BIA or IJ factfinding, not to constitutional claims and questions of law. Indeed, even in *Jian Yun Zheng*, the Court first decided a necessary legal issue de novo, *see id.* at 46-47 (regarding when to review BIA's ineffectiveness of counsel decisions), and then reviewed whether the BIA abused its discretion in finding certain facts, *see id.* at 47-48. The regulatory (i.e., sua sponte) motion to reopen process, which assuredly is wholly discretionary, *see Xue Yong Zhang*, 617 F.3d at 663-64, must not be confused with the statutory motion to reopen process, which is not wholly discretionary.

**6.**

Lastly, this Court, on a petition for review of a denied motion to reopen, "must have adequate authority . . . to formulate and issue appropriate orders for relief." *Boumediene*, 553 U.S. at 787. For a diligent petitioner who proves she was prevented from filing a timely petition for review by ineffective assistance or governmental interference, the appropriate relief, as the Government agrees, ultimately is a reissuance of the order of removal. If the BIA considers the issues, errs on a ground that is not "primarily committed to the BIA's discretion," and refuses to reissue the final order of removal, this Court must have the authority to order reissuance if the motion to reopen process is to be an adequate and effective substitute for habeas. The Government argued at length in its supplemental brief, before altering its position in its second supplemental brief, that this Court has the authority to direct the BIA to reissue a final order of removal. *See, e.g.*, *Dearinger v. Reno*, 232 F.3d 1042 (9th Cir. 2000) (requiring the government to reenter the BIA's order and restart the 30-day filing period). We agree that the Court has such authority.

The All Writs Act empowers the Court to "issue all writs necessary or appropriate in aid of [its] respective jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). As the Supreme Court has held, "Congress's failure expressly to confer the authority [to issue a writ] in a statute allowing appellate review should not be taken as an implicit denial of that power." *Nken*, 129 S. Ct. at 1756. We leave to individual cases to determine when such a writ would be appropriate.

However, for the purpose of our inquiry into the constitutional adequacy of the statutory motion to reopen process, we find that, at a minimum, this Court has inherent authority to direct the BIA to reissue an order of removal. Federal courts have "inherent authority to protect their

-33-

proceedings and judgments in the course of discharging their traditional responsibilities." *Degen v. United States*, 517 U.S. 820, 823 (1996). In immigration cases, we have exercised such inherent authority to grant remedies when we had jurisdiction and Congress had not provided "clear direction" limiting our inherent powers. *Mapp v. Reno*, 241 F.3d 221, 227-29 (2d Cir. 2001) (finding authority to grant bail to habeas petitioner because the inherent power to grant remedies is limited only by "specific statutory provisions," not "by general attitudes"); *see also Elkimya v. DHS*, 484 F.3d 151, 153-54 (2d Cir. 2007) (extending *Mapp* to petitions for review). In *Elkimya*, we permitted detainees to file motions for bail pending this Court's consideration of their petitions for review because we had jurisdiction over the petition for review, Congress had not specifically deprived the Court of authority to issue such remedy, and such remedy was "the most streamlined and efficient manner" of exercising our inherent authority "to make the petition for review remedy effective" after the REAL ID Act. *Id.* at 153-54 (internal quotation marks, brackets, and ellipsis omitted).

This Court has the authority to direct the BIA to reissue a final order of removal. Congress has not specifically deprived the court of the authority to direct the BIA to reissue a final order of removal if this Court grants a petition for review of a denial of a motion to reopen. Indeed, we believe that Congress envisioned that we would grant such remedies in appropriate cases. Congress passed the REAL ID Act to "provide a scheme of judicial review which is an adequate and effective substitute for habeas corpus." *Xiao Ji Chen*, 471 F.3d at 326 (brackets and internal quotation marks omitted). As the Supreme Court has stated, when Congress has replaced the writ of habeas with an adequate and effective substitute, "it has granted to the courts broad remedial powers to secure the historic office of the writ." *Boumediene*, 553 U.S. at 776-77. With no specific statutory indication otherwise, we do not believe that Congress granted us

-34-

the authority to review denied motions to reopen but denied us the power to effectuate that review. Moreover, requiring the BIA to reissue a final order of removal, thus providing the alien a new 30-day period to petition for review of the merits of the order of removal, is the "the most streamlined and efficient" remedy in the context of the REAL ID Act.[1]

* * *

In sum, in the context of Luna and Thompson's appeals, the statutory motion to reopen process as described herein is an adequate and effective substitute for habeas. We emphasize that because habeas is "designed to restrain" the Government's power, the Government must ensure that the motion to reopen process remains an adequate and effective substitute for habeas. *Boumediene*, 553 U.S. at 765-66.

**VI.**

Having determined that an adequate and effective substitute for habeas review is available for Luna's and Thompson's claims regarding the timeliness of their appeals, we conclude that the 30-day filing deadline as applied to Luna and Thompson does not violate the Suspension Clause. Thus, we lack jurisdiction over their petitions for review. *Ruiz-Martinez*, 516 F.3d at 105-06. Consistent with this opinion, Luna and Thompson may file motions to

---

[1] To avoid any confusion, we note that a reviewing court ordinarily should remand rather than decide a matter that (1) is primarily committed to the BIA's discretion and (2) has not yet been considered by the BIA. *INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam); *see also Gonzales v. Thomas*, 547 U.S. 183, 186-87 (2006) (per curiam). However, that rule does not apply if the two conditions are not present. *E.g.*, *Shi Liang Lin v. U.S. DOJ*, 494 F.3d 296, 313 n.15 (2d Cir. 2007) (en banc) (declining to remand because the question was not committed to the BIA's discretion and the BIA "had ample opportunity" to consider the question "in the first instance"). Because such a determination depends on a case's particular facts, we do not attempt to list the situations in which a remand would (or would not) be appropriate.

reopen with the BIA, requesting equitable tolling and ultimately reissuance of the final orders of removal.[2]

## CONCLUSION

For the foregoing reasons, Thompson and Luna's petitions for review are **DISMISSED**.

---

[2] We express no opinion on the merits of such motions or the diligence of Petitioners. However, given the uncertainty about whether the statutory motion to reopen process was an adequate and effective substitute for habeas, as reflected in our earlier opinion, it would seem harsh to charge these pro se Petitioners, who lacked the benefit of the present opinion, with lack of diligence if they can show that they diligently filed petitions for review with this Court.