**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 19, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ABRAHAM ALEJANDRO GONZALEZ-
ALARCON,

      Petitioner - Appellant,

v.

No. 16-2263

ADRIAN P. MACIAS, El Paso Field
Office Director, Immigration and Customs
Enforcement; RONALD WARREN,
Assistant Field Officer Director,
Immigration and Customs Enforcement,

      Respondents - Appellees.
_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:15-CV-00910-MV-LF)**
_____

Olsi Vrapi, Noble & Vrapi, P.A., Albuquerque, New Mexico, for Petitioner-Appellant.

Edward Han, Assistant United States Attorney (James D. Tierney, Acting United States Attorney, and Marisa A. Ong, Assistant United States Attorney, Las Cruces, New Mexico, with him on the briefs), Office of the United States Attorney, Albuquerque, New Mexico, for Respondents-Appellees.
_____

Before **TYMKOVICH**, Chief Judge, **EBEL** and **LUCERO**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

Abraham Gonzalez-Alarcon filed a habeas petition under 28 U.S.C. § 2241 alleging specific facts which, if proven, would demonstrate that he is a United States citizen. He seeks release from custody from Immigration and Customs Enforcement ("ICE") following ICE's reinstatement of a prior order of removal on that basis. Dismissing Gonzalez-Alarcon's petition, the district court concluded that he was required to exhaust administrative remedies, jurisdiction was barred by the REAL ID Act, and the petition for review process is an adequate substitute for habeas such that the REAL ID Act's jurisdiction-stripping provisions do not offend the Suspension Clause.

We conclude that the exhaustion provision at issue, 8 U.S.C. § 1252(d), does not govern facially valid citizenship claims. That subsection applies only to aliens. And because district courts have jurisdiction to determine their own jurisdiction, a court must first consider whether a petitioner is in fact an alien before requiring exhaustion. If a petitioner is a citizen, the provision does not apply.

We further hold that the REAL ID Act's jurisdiction-stripping provisions raise serious Suspension Clause concerns in one limited context. With respect to a United States citizen subject to a reinstated order of removal for whom the deadline to seek judicial review has passed, the REAL ID Act appears to bar federal court review. These restrictions would effectively strip citizenship from those who do not clear various procedural hurdles. Citizenship cannot be relinquished through mere neglect. Afroyim v. Rusk, 387 U.S. 253, 268 (1967). And "[t]he very nature of the writ demands that it be administered with the initiative and flexibility essential to insure

that miscarriages of justice within its reach are surfaced and corrected." Harris v. Nelson, 394 U.S. 286, 291 (1969). Under the Suspension Clause, Gonzalez-Alarcon must be granted some path to advance his facially valid claim of citizenship in federal court.

Before permitting Gonzalez-Alarcon to proceed under the Great Writ, however, we conclude he should first attempt to obtain review of his citizenship claim through the REAL ID Act. In a similar case, the Ninth Circuit held that a habeas petitioner should file a motion to reopen his immigration proceedings—even though such a motion would be procedurally improper—and file a petition for review of any denial challenging the "jurisdictional issue" of citizenship. Iasu v. Smith, 511 F.3d 881, 893 (9th Cir. 2007). In Gonzalez-Alarcon's case, such a petition would be filed in the Fifth Circuit, where his original removal proceedings occurred. See § 1252(b)(2). We ordered supplemental briefing as to whether Gonzalez-Alarcon could obtain judicial review of his citizenship claim by following the procedure suggested in Iasu. The government represents to us that Gonzalez-Alarcon "could appeal the denial of such a motion to reopen to the Fifth Circuit in a petition for review." In light of this position, we conclude that the appropriate course of action is to stay our hand until Gonzalez-Alarcon has attempted to obtain judicial review within the confines of the REAL ID Act. Exercising jurisdiction under 28 U.S.C. § 1291, we vacate the district court's decision and remand with instructions to dismiss without prejudice.

3

# I

Gonzalez-Alarcon was born in Mexico in 1993. He entered the United States in 2005 and was ordered removed in September 2012. After Gonzalez-Alarcon reentered the United States, his order of removal was reinstated in September 2013. He was removed, and on being found in the United States yet again, was taken into federal custody and charged with illegal reentry. On April 26, 2015, his order of removal was reinstated.

At some point, Gonzalez-Alarcon learned that he could claim rights based on United States citizenship. A child born abroad to an unwed, citizen mother is a citizen if the mother lived in the United States for at least one year prior to the child's birth. 8 U.S.C. § 1409(c).[1] An affidavit submitted by Gonzalez-Alarcon's mother, Dalia Alarcon, states that she was born in San Miguel, New Mexico, in 1973 at the hands of a local midwife. Her parents have always told her that she was born in the United States. However, she tells us that her parents did not get a United States birth certificate and left the United States shortly after her birth. Her parents divorced in 1979 or 1980 and her father returned to the United States. She lived with him in Albuquerque for approximately three years in the 1980s.

Gonzalez-Alarcon's great aunt, Beatriz Alarcon-Garcia, also submitted an affidavit. She states that her brother and his wife came to live with her in San

---

[1] The Supreme Court recently struck down this statute's differential treatment of mothers and fathers, but its decision applies only prospectively. See Sessions v. Morales-Santana, 137 S. Ct. 1678, 1701 (2017).

4

Miguel, New Mexico in 1972. The couple lived in a garage near Alarcon-Garcia's house, and joined the rest of the family for meals. Gonzalez-Alarcon's grandmother was pregnant at the time with Gonzalez-Alarcon's mother, and had regular visits with the local midwife. When she went into labor, Gonzalez-Alarcon's grandmother went to the midwife's home and returned with Dalia—Gonzalez-Alarcon's mother. She also avers that Dalia later returned to New Mexico and attended school in Albuquerque for several years.

After counsel submitted these affidavits, the government dismissed the criminal charges against Gonzalez-Alarcon. He then moved for a stay of removal based on his alleged United States citizenship. On October 9, 2015, while in ICE custody, Gonzalez-Alarcon filed a § 2241 petition in the district court. He sought release from custody based on citizenship. A few days after the complaint was filed, Gonzalez-Alarcon was released from detention subject to certain conditions. He is barred from travelling outside the ICE Oklahoma City sub-office boundaries without prior approval, and must periodically report to immigration officers.

The government moved to dismiss the habeas petition based on mootness. However, the district court denied the motion, concluding that the restrictions on Gonzalez-Alarcon constituted custody for habeas purposes. But it held that the petition was subject to dismissal for failure to exhaust administrative remedies and for lack of jurisdiction. Gonzalez-Alarcon timely appealed.

5

## II

The district court concluded that it lacked jurisdiction under the REAL ID Act and that the same statute required Gonzalez-Alarcon to exhaust administrative remedies. We consider that statute's scope and structure.

In general, removal orders are entered under 8 U.S.C. § 1229a, which provides for proceedings before an Immigration Judge. Orders issued under that section may be appealed to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1003.1(b). They are subject to motions to reconsider and motions to reopen. 8 U.S.C. § 1229a(c)(6), (7); 8 C.F.R. § 1003.2(b), (c). Motions to reconsider are subject to a twenty-day deadline, and motions to reopen are subject to a ninety-day deadline. 8 U.S.C. § 1229a(c)(6), (7). These deadlines are subject to equitable tolling. See Galvez Piñeda v. Gonzales, 427 F.3d 833, 838 (10th Cir. 2005). The BIA may also reopen or reconsider a decision sua sponte. 8 C.F.R. § 1003.2(a).

There are several other types of removal orders. Certain aliens are subject to expedited removal procedures. See 8 U.S.C. § 1225(b) (aliens determined inadmissible when arriving in the United States); § 1228(b) (aliens convicted of an aggravated felony). Gonzalez-Alarcon was ordered removed under § 1231(a)(5), which allows for reinstatement of prior removal orders. In such proceedings, the "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." Id. An order of removal may be reinstated by an immigration officer upon three findings: (1) "the alien has been subject to a prior order of removal"; (2) "the alien is in fact an alien who was previously removed, or

6

who departed voluntarily while under an order of exclusion, deportation, or removal"; and (3) "the alien unlawfully reentered the United States." 8 C.F.R. § 241.8(a). One subject to reinstatement "has no right to a hearing before an immigration judge." Id.

Removal orders may be challenged only by way of a petition for review filed in the Court of Appeals:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5). The statute further states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

§ 1252(g).

A petition for review must be filed within thirty days of a final order of removal. §1252(b)(1). That deadline is mandatory and jurisdictional; it is not subject to equitable tolling. Stone v. INS, 514 U.S. 386, 405 (1995). Further, "[a]

7

court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." § 1252(d)(1).

Although § 1231(a)(5) states that reinstated orders of removal are not subject to being "reviewed," the statute also states that "[n]othing . . . in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review." § 1252(a)(2)(D). We have thus held that "Congress clearly provided for our review of 'constitutional claims or questions of law' related to reinstatement orders." Lorenzo v. Mukasey, 508 F.3d 1278, 1282 (10th Cir. 2007) (quoting § 1252(a)(2)(D)). However, an individual petitioning for review of a reinstatement order cannot challenge the original order of removal, "including constitutional claims or questions of law," because such a challenge will be time barred. Cordova-Soto v. Holder, 659 F.3d 1029, 1032 (10th Cir. 2011).

At the time Gonzalez-Alarcon filed his habeas petition, the deadline for filing a petition for review of his reinstated removal order had expired. Because Gonzalez-Alarcon reentered the country after having been removed, his "prior order of removal is reinstated from its original date and is not subject to being reopened." § 1231(a)(5). Further, the BIA will not permit individuals to reopen removal proceedings after they have left the country. See 8 C.F.R. § 1003.2(d) ("A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States."). Our court has held that the post-departure bar is

8

invalid because it is inconsistent with 8 U.S.C. § 1229a(c)(7), which states that "[a]n alien may file one motion to reopen proceedings under this section." Contreras-Bocanegra v. Holder, 678 F.3d 811, 813 (10th Cir. 2012) (en banc). But the Fifth Circuit has held that this rule extends only to motions to reopen or reconsider, not to sua sponte reopening or reconsideration. See Garcia-Carias v. Holder, 697 F.3d 257, 265 (5th Cir. 2012) (distinguishing Navarro-Miranda v. Ashcroft, 330 F.3d 672 (5th Cir. 2003)). We note the Fifth Circuit's rule because Gonzalez-Alarcon's original removal proceedings occurred in the Fifth Circuit, and a petition for review must be "filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2).

### III

We review de novo a district court dismissal for failure to exhaust. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). As noted above, § 1252(d) states that an order of removal is reviewable only if "the alien has exhausted all administrative remedies available to the alien as of right." Id. The district court concluded that Gonzalez-Alarcon had the right to file a Form N-600 application with U.S. Citizenship and Immigration Services ("USCIS"). This form allows an individual to apply for a "certificate of citizenship." See 8 C.F.R. § 341.1; Children Born Outside the United States; Applications for Certificate of Citizenship, 66 Fed. Reg. 32,138, 32,140 (June 13, 2001).

As several of our sibling circuits have recognized, this exhaustion requirement applies only to "aliens." § 1252(d)(1). The Ninth Circuit has thus explained that "a

9

claim to citizenship need not be exhausted." Minasyan v. Gonzales, 401 F.3d 1069, 1075 (9th Cir. 2005). If exhaustion of a citizenship claim were required, "it would be possible to unintentionally relinquish U.S. citizenship. . . . The Constitution does not permit American citizenship to be so easily shed." Id. (quotations omitted). Accordingly, that court has held that "the statutory administrative exhaustion requirement of § 1252(d)(1) does not apply to a person with a non-frivolous claim to U.S. citizenship even if he has previously been (illegally) deported by the government." Id. (quotation and alteration omitted); see also Theagene v. Gonzales, 411 F.3d 1107, 1116 n.4 (9th Cir. 2005) ("[T]he plain language of the statute specifies that only an alien may be required to exhaust remedies. Moreover, a citizen cannot transform himself into an alien merely by failing to raise the question of his citizenship at the administrative level.").

The Eighth Circuit has held that "the exhaustion provisions of § 1252(d)(1) do not apply to 'any person' challenging a final order of removal, only to an 'alien.'" Moussa v. I.N.S., 302 F.3d 823, 825 (8th Cir. 2002). Accordingly, federal courts possess jurisdiction to "determine whether [a petitioner] is an alien in order to decide whether § 1252(d)(1) applies to him." Id. As the Fifth Circuit stated the proposition, courts "always have jurisdiction to determine [their] jurisdiction." Omolo v. Gonzales, 452 F.3d 404, 407 (5th Cir. 2006). And because "[o]nly an 'alien' may be required to exhaust his administrative remedies," a court "must determine whether [a petitioner] is an alien in order to determine whether § 1252(d)(1) bars . . . jurisdiction." Id. The Second Circuit is in accord. See Poole v. Mukasey, 522 F.3d

10

259, 264 (2d Cir. 2008) ("The statutory administrative exhaustion requirement of § 1252(d)(1) does not apply to a person with a non-frivolous claim to U.S. citizenship." (quotations and alteration omitted)).

Although our court has not previously addressed the precise issue, we have reached a similar conclusion on a related question. In Shepherd v. Holder, 678 F.3d 1171 (10th Cir. 2012), we noted that "[c]itizenship constitutes the denial of an essential jurisdictional fact in a deportation proceeding" because only aliens are removable. Id. at 1175 (quotation omitted). And in assessing jurisdiction under § 1252, we held that "we have jurisdiction to determine jurisdictional facts" including "the issue of Ms. Shepherd's citizenship." Id. at 1179. That case concerned an alien who was removable following a criminal offense; we explained that the statute "divests courts of jurisdiction only if an alien 'is removable by reason of having committed a criminal offense' 8 U.S.C. § 1252(a)(2)(C) (emphasis added). It does not say that courts lack jurisdiction if the alien is found deportable." Id. at 1180 (quotation and ellipses omitted). Accordingly, "Congress may limit federal court jurisdiction through provisions such as the § 1252(a)(2)(C) bar, but courts have authority to determine whether the factual conditions for the bar are present." Id.[2] Applying the same analysis, and joining the circuits noted above, we conclude that § 1252(d)(1) does not require that a claim of citizenship be exhausted.

---

[2] We discussed exhaustion in Shepherd, but did not consider whether § 1252(a)(1) applies to citizens, because we concluded the petitioner was not a citizen. Shepherd, 678 F.3d at 1176-78, 1185.

11

It appears that the sole circuit court decision requiring exhaustion of a citizenship claim is Johnson v. Whitehead, 647 F.3d 120 (4th Cir. 2011). In that case, the court did not consider § 1252(d)(1). Instead, it held that a citizenship claim was barred for failure to exhaust under 8 U.S.C. § 1503 because the petitioner had failed to administratively appeal the denial of his Form N-600. Johnson, 647 F.3d at 125. Section 1503 permits the filing of a declaratory judgment action if an individual "claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States." § 1503(a). The statute provides that such actions must be filed "within five years after the final administrative denial of such right or privilege." Id.

Section 1503 is not at issue in this case. That statute does not permit suits "if the issue of such person's status as a national of the United States . . . arose by reason of, or in connection with any removal proceeding." § 1503(a). Gonzalez-Alarcon's claim of citizenship plainly arose in connection with his removal proceeding. See Rios-Valenzuela v. Dep't of Homeland Sec., 506 F.3d 393, 398 (5th Cir. 2007) (section 1503 suit cannot be maintained if "citizenship that forms the basis of [a claim] originates, at the least, in connection with the removal proceedings"); see also Iasu, 511 F.3d at 891 n.9 (concluding that § 1503(a) cannot supply a remedy to an individual in removal proceedings because "§ 1252(b)(5) is the exclusive means of obtaining a declaration of nationality for a person in removal proceedings (and it must be sought in a petition for review of the final order of removal)"). Hence, even

12

if Gonzalez-Alarcon were to file a Form N-600, he would not be able to pursue a § 1503 action.

Regardless, in no event would the filing of a Form N-600 provide Gonzalez-Alarcon the relief he seeks: release from ICE supervision. As we have previously recognized, "exhaustion is not required where it would be futile or fail to provide adequate relief." McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 874 (10th Cir. 2007) (quotation and alterations omitted). We accordingly join the majority of our sibling circuits in holding that if a petitioner advances a plausible claim to citizenship, the district court possesses jurisdiction to determine whether § 1252(d)(1) applies.

## IV

The district court also concluded that jurisdiction over Gonzalez-Alarcon's petition was barred by the REAL ID Act. We review that issue of statutory interpretation de novo. Dalzell v. RP Steamboat Springs, LLC, 781 F.3d 1201, 1206 (10th Cir. 2015). As with the exhaustion requirement, Gonzalez-Alarcon argues that the jurisdictional bars contained in § 1252 apply only to aliens, and that the REAL ID Act in general is permeated with references to aliens. Although he is correct that much of the statutory scheme applies only to aliens, we agree with the district court that the entirety of the statute cannot be read as being so limited.

As the district court noted, some portions of § 1252 specifically apply to individuals who claim to be United States nationals rather than aliens. Specifically, subsection (b)(5) sets forth the procedures to be followed if "the petitioner claims to

13

be a national of the United States." § 1252(b)(5). The term "alien" is defined as "any person not a citizen or national of the United States." § 1101(a)(3). Accordingly, this subsection would be entirely superfluous if § 1252 applies only to aliens. But "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quotation and alteration omitted).

Further, although one of the provisions at issue bars habeas review of claims filed "by or on behalf of any alien," § 1252(g), the other does not reference aliens. Under subsection (a)(5), "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter" notwithstanding "section 2241 of Title 28, or any other habeas corpus provision." § 1252(a)(5). The term "judicial review" includes "habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision." Id. Under the plain language of that subsection, a habeas challenge to an order of removal is barred regardless of whether the petitioner is an alien or claims citizenship.[3]

---

[3] Although Gonzalez-Alarcon does not raise the issue of constitutional avoidance, this conclusion holds even under that canon. "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." Hernandez-Carrera v. Carlson, 547 F.3d 1237, 1245 (10th Cir. 2008) (quotation omitted). Because the plain language of the statute is unambiguous, we cannot read

14

Gonzalez-Alarcon also argues that his habeas petition does not seek review of a removal order but merely attacks his detention. He cites the legislative history of the REAL ID Act, which states that the statute "will not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Instead, the bill would eliminate habeas review only over challenges to removal orders." Joint Explanatory Statement of the Committee of Conference, H.R. Cong. Rep. No 109-72 at 175, 151 Cong. Rec. H2836, 2873 (May 3, 2005). Several courts have acknowledged that § 1252 does not bar habeas relief as to claims that are independent of a removal order. See Singh v. Gonzalez, 499 F.3d 969, 972-73 (9th Cir. 2007) (courts have "distinguished between challenges to orders of removal and challenges that arise independently"); Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1366 (11th Cir. 2006) (a "petitioner who contests the very existence of an order of removal does not seek 'review of an order of removal' within the meaning of the REAL ID Act"); Kumarasamy v. Att'y Gen., 453 F.3d 169, 172 (3d Cir. 2006) (an alien challenging the legality of removal because he allegedly never received notice of his removal order is "not seeking review of an order of removal").

But courts have held that the jurisdiction-stripping provisions apply to indirect challenges to the merits of a removal order. See Verde-Rodriguez v. Att'y Gen., 734 F.3d 198, 206 (3d Cir. 2013) (no jurisdiction to review habeas petition that "does not challenge the existence of his removal order, but alleges errors on which the validity

it as permitting citizenship claims regardless of the constitutional issue addressed infra.

15

of the final order are contingent" (quotation and alteration omitted)); Martinez v. Napolitano, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is inextricably linked to the order of removal, it is prohibited by section 1252(a)(5)." (quotation omitted)); Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011) (if petitioner "is indirectly challenging her reinstated order of removal, . . . we hold that section 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge"). In an unpublished case, we held that a district court lacked jurisdiction over a similar habeas claim because "the challenge to [petitioner's] detention is grounded in the removal order rather than based on some inherent problem with the detention itself." Essuman v. Gonzalez, 203 F. App'x 204, 211-12 (10th Cir. 2006) (unpublished).

Although Gonzalez-Alarcon seeks release from detention, his claim is based on the alleged invalidity of his order of removal. The only basis for ICE's continued supervision of Gonzalez-Alarcon is his pending removal order. See § 1231(a)(3) (providing that an individual "pending removal, shall be subject to supervision").[4] And Gonzalez-Alarcon seeks invalidation of that order on the basis of citizenship,

---

[4] We agree with the district court that Gonzalez-Alarcon remains in custody for habeas purposes. See Galaviz-Medina v. Wooten, 27 F.3d 487, 493 (10th Cir. 1994) ("[A]n alien whose liberty is restricted pursuant to an order emanating from the INS is 'in custody' for purposes of satisfying the prerequisites of habeas review."). His liberty is significantly restricted by an ICE order preventing him from travelling outside the ICE Oklahoma City sub-office boundaries without prior approval, and requiring him to report to immigration officers.

16

which would result in his release. Accordingly, we conclude that he is seeking "judicial review of an order of removal" which is barred by § 1252(a)(5).

**V**

Having determined that the REAL ID Act bars habeas review of Gonzalez-Alarcon's claim, we consider whether Congress possesses the constitutional authority to prevent such review. We hold that although barring habeas review of citizenship claims raises a serious Suspension Clause question, Gonzalez-Alarcon has not carried his burden of demonstrating that the petition for review process is an inadequate substitute at the present time. See Miller v. Marr, 141 F.3d 976, 977 (10th Cir. 1998) (petitioner bears the burden of demonstrating inadequacy of habeas substitute). It is not clear to us that Gonzalez-Alarcon would be unable to present his citizenship claim in a petition for review following the denial of a motion to reopen—which he would be required to present to the Fifth Circuit. See § 1252(b)(2) (petition for review to be filed in circuit in which removal proceedings occurred).

In response to our request for supplemental briefing, Gonzalez-Alarcon contends that reopening is not available with respect to a reinstatement order. The government states that although an immigration judge would be prohibited "from granting a motion to reopen removal proceedings filed by Gonzalez-Alarcon, Gonzalez-Alarcon could appeal the denial of such a motion to reopen to the Fifth Circuit in a petition for review." Unless Gonzalez-Alarcon is denied review through this process, we decline to address his habeas petition.

17

## A

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Supreme Court has not yet decided whether the Suspension Clause protects the right to habeas review as it has developed through our nation's history, but has stated that "at the absolute minimum," it "protects the writ as it existed in 1789." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (quotation omitted). There is little doubt that Gonzalez-Alarcon's petition falls within the traditional ambit of habeas review. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." Id. Although the writ did not originally extend to individuals detained under state authority, see Felker v. Turpin, 518 U.S. 651, 663 (1996), Gonzalez-Alarcon is subject to supervision under federal law, see § 1231(a)(3). And the writ at common law consistently included "challenges to the jurisdiction of the custodian." St. Cyr, 533 U.S. at 302; see also Yellowbear v. Wyo. Att'y Gen., 525 F.3d 921, 924 (10th Cir. 2008) ("Absence of jurisdiction in the convicting court is indeed a basis for federal habeas corpus relief cognizable under the due process clause."). As Gonzalez-Alarcon notes, defendants lack authority to detain or remove United States citizens. See Ng Fung Ho v. White, 259 U.S. 276, 284 (1922) ("Jurisdiction in the executive to order deportation exists only if the person arrested is an alien. The claim of citizenship is thus a denial of an essential

18

jurisdictional fact."); Shepherd, 678 F.3d at 1175 (whether an individual is an alien is a "jurisdictional fact" (quotation omitted)).

"[J]udgments about the proper scope of the writ are normally for Congress to make." Felker, 518 U.S. at 664 (quotation omitted). Yet Congress' authority is not unbounded. In St. Cyr, the Court held that "some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.'" Id. (quoting Heikkila v. Barber, 345 U.S. 229, 235 (1953)). Accordingly, "a serious Suspension Clause issue would be presented if" Congress has "withdrawn that power from federal judges and provided no adequate substitute for its exercise." Id. at 305; see also Swain v. Pressley, 430 U.S. 372, 381 (1977) (the Suspension Clause does not prohibit the "substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention").

Although Gonzalez-Alarcon's detention fits within the framework of traditional habeas, there appears to be little dispute that a petition for review would provide an adequate substitute if available. Individuals detained by immigration authorities are "entitled to a judicial determination of their claims that they are citizens of the United States." Ng Fung Ho, 259 U.S. at 285. Specifically, "a resident of this country has a right to de novo judicial determination of a claim to United States citizenship" if the claim is "supported by evidence sufficient, if believed, to entitle him to a finding of citizenship." Agosto v. Immigration & Naturalization Serv., 436 U.S. 748, 753 (1978) (quotation, alteration, and italics omitted).

19

Section 1252 provides for de novo review. A citizenship claim asserted in a petition for review may be decided by the appropriate court of appeals if there are no genuine issues of material fact. § 1252(b)(5)(A). If the facts are disputed, the proceeding is transferred to a district court "for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28." § 1252(b)(5)(B). Accordingly, several circuit courts have held that petitions for review generally provide an adequate and effective substitute for the writ of habeas corpus. See, e.g., Ruiz-Martinez v. Mukasey, 516 F.3d 102, 105 (2d Cir. 2008); Mohammed v. Gonzales, 477 F.3d 522, 526 (8th Cir. 2007).

Other cases have considered the possibility of an as applied Suspension Clause challenge of the sort Gonzalez-Alarcon advances. See Luna v. Holder, 637 F.3d 85, 92 (2d Cir. 2011); Iasu, 511 F.3d at 891. He notes that the jurisdictional deadline to file a petition for review of his reinstatement order has passed. § 1252(b)(1); Stone, 514 U.S. at 405. And he is subject to a reinstated order of removal, which "is not subject to being reopened." § 1231(a)(5). The REAL ID Act does not contain any explicit safety valve under which an individual could obtain review of a reinstated order of removal that was not presented in a timely petition for review.

In the context of a citizenship claim, the lack of a failsafe provision is troubling. Citizenship is unique; it is a person's "basic right for it is nothing less than the right to have rights." Perez v. Brownell, 356 U.S. 44, 64 (1958) (Warren, C.J., dissenting). The Supreme Court has thus held that individuals possess "a

20

constitutional right to remain a citizen in a free country unless he voluntarily relinquishes that citizenship." Afroyim, 387 U.S. at 268; see also 8 U.S.C. § 1481(a) (providing that United States nationality may be lost by "voluntarily performing" certain acts "with the intention of relinquishing United States nationality").[5] Yet the "practical and concrete effect" of a removal order is "to deprive a United States citizen . . . of his right to reside in this country." Anderson v. Holder, 673 F.3d 1089, 1095 (9th Cir. 2012); see also Trop v. Dulles, 356 U.S. 86, 102 (1958) (plurality opinion) ("[T]he expatriate has lost the right to have rights."); Knauer v. United States, 328 U.S. 654, 659 (1946) ("[D]enaturalization, like deportation, may result in the loss of all that makes life worth living." (quotation omitted)). For individuals in Gonzalez-Alarcon's position, the REAL ID Act poses a weighty Suspension Clause question.

---

[5] The Court has recognized a distinction between those who are citizens under the Fourteenth Amendment and individuals whose claim to citizenship rests on statute because they were not "born or naturalized in the United States." Rogers v. Bellei, 401 U.S. 815, 835 (1971). With respect to the latter category, which includes Gonzalez-Alarcon, Congress may impose conditions precedent and subsequent to citizenship, such as residency requirements. Id. at 834. But it strains credulity to suggest that Congress intended to impose, as a condition subsequent to citizenship, that an individual successfully resist removal after being incorrectly detained by an executive agency lacking jurisdiction over citizens. Under 8 U.S.C. § 1409(c), an individual born outside the United States out of wedlock acquires citizenship if his mother was a citizen and had previously lived in this country for one year. We are not directed to any act of Congress that would result in the elimination of Gonzalez-Alarcon's citizenship if his allegations prove true.

21

**B**

Despite this concern, we conclude that the Suspension Clause argument raised by Gonzalez-Alarcon should not be addressed until he first attempts to obtain review through the petition for review process. Congress has provided that "habeas corpus may be granted" by a federal court and that the court shall "dispose of the matter as law and justice require." §§ 2241, 2243. "Discretion is implicit in th[is] statutory command." Fay v. Noia, 372 U.S. 391, 438 (1963), overruled on other grounds, Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Danforth v. Minnesota, 552 U.S. 264, 278 (2008) (noting this language is "an authorization to adjust the scope of the writ in accordance with equitable and prudential considerations"). In Dretke v. Haley, 541 U.S. 386 (2004), the Court declined to consider whether the "actual innocence" exception previously extended to capital sentencing aggravators also applied to non-capital sentencing enhancements, directing the lower court to "first to consider alternative grounds for relief . . . that might obviate any need to reach the actual innocence question." Id. at 388-89. It held that courts should consider "claims for comparable relief" before addressing an allegation of actual innocence, and that the "availability of other remedies" is a "sufficient justification for a general rule of avoidance." Id. at 394, 395.

We think the same rationale applies here. Congress clearly intended to funnel all challenges to removal through the petition for review process. See Bonhometre v. Gonzales, 414 F.3d 442, 446 (3d Cir. 2005). Yet, as noted above, it did not explicitly provide for judicial review of a citizenship claim raised after the petition for review

22

deadline passes.  § 1252(b)(1); Stone, 514 U.S. at 405.  Nevertheless, Gonzalez-Alarcon may be able to assert his citizenship claim through the petition for review process.

The Ninth Circuit provided the general outline for such a process in Iasu. There, the court rejected an as applied Suspension Clause claim based on citizenship, because the petitioner had a potential administrative path to judicial review under the REAL ID Act.  Specifically, the court indicated that he could file an untimely motion to reopen.  Iasu, 511 F.3d at 892.  Although such a motion could be rejected as untimely, the court suggested that "alienage is also a jurisdictional prerequisite at the administrative level" and thus could be considered by the agency.  Id. at 893.  But "even if an IJ denies such a motion to reopen as procedurally improper, and even if the BIA upholds the denial, a court of appeals could still review the jurisdictional issue on direct appeal from that denial."  Id.  These administrative steps "provide[] the necessary process to alleviate Suspension Clause concerns."  Id.

Similarly, in Luna, the court considered as applied Suspension Clause claims brought by two individuals who alleged they were prevented from filing timely petitions for review.  637 F.3d at 87.  The court stated that such petitioners cannot be left without a "forum in which to raise plausible claims of constitutional violations" and thus "legitimate Suspension Clause concerns" were present.  Id.  But it concluded that the statutory motion to reopen process, if "subject to de novo review of legal issues and with equitable tolling and the removal of the departure bar" provided an adequate alternative to habeas.  Id.

23

Gonzalez-Alarcon's case is complicated by two additional factors not present in Iasu and Luna. First, the petitioners in those cases had not been previously removed. The REAL ID Act provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

§ 1231(a)(5). Gonzalez-Alarcon also points out other potential regulatory obstacles to relief. See 8 C.F.R. § 1003.23(b)(1) (setting a ninety-day deadline for motions to reopen and prohibiting such motions from individuals who previously departed the United States). As with the time limit on motions to reopen considered in Iasu and Luna, see § 1229a(c)(7)(C), the agency may necessarily deny reopening as procedurally improper. Alternatively, the statute's references to "aliens" could be read so that this subsection does not apply to citizenship claims on the same basis discussed in Part III, supra. In either event, Gonzalez-Alarcon might be able to file a petition for review and seek judicial consideration of his citizenship claim. In Mata v. Lynch, 135 S. Ct. 2150 (2015), the Court held that courts of appeals possess jurisdiction to review the denial of a motion to reopen regardless of "[w]hether the BIA rejects the alien's motion to reopen because it comes too late or because it falls short in some other respect." Id. at 2154-55.

This brings us to the second complication. We say that Gonzalez-Alarcon might be able to obtain review because the question cannot be directed to our court.

His petition for review would have to be filed in the Fifth Circuit. § 1252(b)(2). And, of course, we have no authority to issue an interpretation of the REAL ID Act binding on that court. But the government has indicated in its supplemental brief that the Fifth Circuit could adjudicate Gonzalez-Alarcon's citizenship claim. It notes that the Fifth Circuit has held that it has "jurisdiction to review [a petitioner's] nationality claim in the context of a reinstatement order." Iracheta v. Holder, 730 F.3d 419, 422 (5th Cir. 2013). Such review is proper because whether a petitioner "is actually an alien is a jurisdictional fact in a removal or reinstatement proceeding." Id. Accordingly, Gonzalez-Alarcon may be able to challenge this jurisdictional fact in federal court regardless of whether his motion to reopen was procedurally proper. We are thus unable to say at this juncture that Gonzalez-Alarcon has shown the REAL ID Act provides an inadequate substitute for habeas.

## VI

Given this reasoning, Gonzalez-Alarcon's habeas petition should be dismissed without prejudice to refiling in the event that his attempts to obtain judicial review of his citizenship claim under the REAL ID Act prove futile. The district court did not specify whether its dismissal was with or without prejudice. Ordinarily, such a dismissal operates as a dismissal with prejudice. See Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1139 (10th Cir. 2005). We conclude that the dismissal should be without prejudice, and thus **VACATE** the district court's dismissal of Gonzalez-Alarcon's habeas petition and **REMAND** with instructions to dismiss without prejudice.

25

16-2263, *Gonzalez-Alarcon v. Macias, et al.*

**TYMKOVICH**, C.J., concurring.

The government cannot deport United States citizens, and the majority is right that Gonzalez-Alarcon must have an opportunity to make his case in front of an Article III court. I agree with most of the analysis in the majority opinion. I agree the REAL ID Act bars habeas review of Gonzalez-Alarcon's claim. And, as the majority notes, "there appears to be little dispute that a petition for review would provide an adequate substitute" for habeas review "if available." Maj. Op. at 19. I also agree the exhaustion requirement of 8 U.S.C. § 1252(d)(1) does not apply to claims of citizenship. Maj. Op. at 2, 9–11.

I write separately to explain my understanding of the review process. While I agree with most of the majority's explanation of this process, I add that, in my view, Gonzalez-Alarcon has an additional opportunity for review through the N-600 application for a "certificate of citizenship." *See* 8 C.F.R. § 341.1.

\*    \*    \*

Gonzalez-Alarcon has at least two routes for review before him. He can file a motion to reopen and appeal denials of his motion until he is able to request review from the Court of Appeals—which must consider his citizenship claim as a matter of jurisdiction. And Gonzalez-Alarcon can also file an N-600 application for a "certificate of citizenship."

*Motion to Reopen*

First, Gonzalez-Alarcon can file a motion to reopen or reconsider his removal order. If the immigration judge denies the motion, Gonzalez-Alarcon can appeal the denial to the Board of Immigration Appeals. If the Board also denies the motion, Gonzalez-Alarcon can seek review from the Court of Appeals. At that stage, since the Court of Appeals can always decide the jurisdictional fact of citizenship, Gonzalez-Alarcon could invoke 8 U.S.C. § 1252(b)(5), which requires the Court of Appeals to decide nationality claims. I explain how this works in more detail below.

As Judge Lucero notes, federal law allows aliens affected by a removal order to file a motion to reopen or reconsider with an immigration judge. 8 U.S.C. § 1229a(c)(6)–(7); 8 C.F.R. § 1003.23(b). The implementing regulations provide that "[a]n Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals." 8 C.F.R. § 1003.23(b)(1). Federal regulations also allow affected parties to file a motion to reopen or reconsider with the Board. *Id.* § 1003.2. This regulation also provides that "[t]he Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." *Id.* § 1003.2(a).

This is the avenue Gonzalez-Alarcon must pursue, since, as the majority explains, the REAL ID Act bars habeas review. It appears from the record that Gonzalez-Alarcon never appealed his initial order of removal. App. 51. Consequently, he should file a motion to reopen under 8 C.F.R. § 1003.23 with the Immigration Court having administrative control over the Record of Proceeding.

Though there are two potential hurdles to review, both can be surmounted. First, as we have explained, the motion would now be untimely: 8 U.S.C. § 1229a(c)(7)(C)(i) and 8 C.F.R. § 1003.23(b)(1) require that a motion to reopen be filed within 90 days of the date of entry of the final order of removal. But, as the Ninth Circuit pointed out in *Iasu v. Smith*, alienage is also a jurisdictional prerequisite at the administrative level, because immigration judges and the Board *do not have subject-matter jurisdiction over United States citizens*. 511 F.3d 881, 893 (9th Cir. 2007); *see also* 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an *alien*." (emphasis added)). For that reason, the immigration judge might reach Gonzalez-Alarcon's citizenship claim in spite of the timeliness bar.

Second, the regulatory provision allowing for the immigration judge to reopen or reconsider a case expressly prohibits a "motion to reopen or to reconsider . . . by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the

United States." 8 C.F.R. 1003.23(b)(1). This provision is often called the "regulatory departure bar."

But the Fifth Circuit, where Gonzalez-Alarcon must pursue review, has held this bar is none at all. *Garcia-Carias v. Holder*, 697 F.3d 257, 265 (5th Cir. 2012). Because in its view the regulatory bar contradicts Congress's express meaning in 8 U.S.C. § 1229a(c)(7), the "statutory right to file a motion to reopen is not trumped by the Board's departure regulation." *Id.*[1]

Yet even if the immigration judge denied the motion to reopen as either untimely or subject to the departure bar, Gonzalez-Alarcon could still obtain review. He can appeal to the Board. And if the Board upholds the denial, and declines to compel the immigration judge to reopen the proceedings, a Court of Appeals could still review the jurisdictional issue on direct appeal from that denial. *Id.* As the *Iasu* court explained: "At that point, the case would be in a procedural posture so that 8 U.S.C. § 1252(b)(5) and § 1252(a)(2)(D) could be invoked" and the citizenship question could be considered. *Id.*

---

[1] As the majority explains, the Fifth Circuit has elsewhere upheld the Board of Immigration Appeals' conclusion that the departure bar removes its jurisdiction to *sua sponte* reopen or reconsider cases. *See Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 676 (5th Cir. 2003). To the extent the Board maintains this interpretation, that would mean Gonzalez-Alarcon cannot pursue review under the Board's *sua sponte* authority. But that does not eliminate his path to review by filing a motion himself.

That is because "[c]itizenship constitutes the denial of an essential jurisdictional fact in a deportation proceeding." *Shepherd v. Holder*, 678 F.3d 1171, 1175 (10th Cir. 2012) (internal quotation marks omitted) (quoting *Duarte-Ceri v. Holder*, 630 F.3d 83, 87 (2d Cir. 2010)). A court of appeals *always* retains jurisdiction to determine jurisdictional facts, such as whether an individual subject to deportation is a U.S. citizen. *See id.* at 1180–81. So, if the immigration judge and the Board declined to grant Gonzalez-Alarcon any relief on his claim of U.S. citizenship, nothing would stop the Fifth Circuit from entertaining it at that stage. The Court of Appeals may then decide Gonzalez-Alarcon's nationality claim or, if there is a genuine issue of material fact, transfer the proceeding to the proper district court "for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under [28 U.S.C. § 2201]." 8 U.S.C. § 1252(b)(5).

The motion-to-reopen procedure is therefore one way Gonzalez-Alarcon can get his Article III court review. And it would be review pursuant to the congressional framework we are obliged to follow.

*N-600 Application*

Gonzalez-Alarcon has an alternative means for relief under the legal framework governing nationality and citizenship claims. Gonzalez-Alarcon has not yet—but may at any time—file a Form N-600, "Application for Certificate of Citizenship," with the U.S. Citizenship and Immigration Services (USCIS).

Approval of such an application would provide him the proof of citizenship he seeks and shield him from any threat of removal proceedings. If the application is denied, Gonzalez-Alarcon may file an appeal using USCIS Form I-290B. 8 C.F.R. § 103.3. And if that appeal is denied, Gonzalez-Alarcon may also choose to file a Form I-290B motion to reopen or reconsider. 8 C.F.R. § 103.5.

The majority opinion concludes the "certificate of citizenship" would do Gonzalez-Alarcon no good because it would not be an order compelling the government to release him. Maj. Op. at 13. But if Gonzalez-Alarcon's application for certification of citizenship is approved, he will have obtained proper certification of his U.S. citizenship. Gonzalez-Alarcon will at that point be categorically ineligible for removal, and so will be released. And even if the government does not release him, Gonzalez-Alarcon can file a motion to reopen his case. Armed with the certificate, Gonzalez-Alarcon will have proof the government has no jurisdiction to deport him, *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922), and the immigration judge will have to address this question because it goes to subject matter jurisdiction. *See Iasu v. Smith*, 511 F.3d 881, 893 (9th Cir. 2007).

\* \* \*

The bottom line is that Gonzalez-Alarcon must seek judicial relief through the proper statutory means—a petition for review in the appropriate court of appeals. "Congress' clear intent [was] to have all challenges to removal orders

heard in a single forum (the courts of appeals)." *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (citation omitted). *See also* 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal.").

Gonzales-Alarcon has multiple paths to vindicate his claim of citizenship. If those fail, then the federal courts can entertain whether a petition for habeas corpus review is then an appropriate vehicle. But as the majority explains, Maj. Op. at 3, 25, we are not yet in a position to hold the existing opportunities for review are an inadequate substitute for the Great Writ.

16-2263, <u>Gonzalez-Alarcon v. Macias</u>

**LUCERO**, J., concurring.

I write separately to explain that the Suspension Clause issue presented by Gonzalez-Alarcon is not resolved by the fact that he had a prior opportunity to file a petition for review. Gonzalez-Alarcon's claim of United States citizenship, like a prisoner's assertion of actual innocence, cannot be rejected as barred by procedural impediments contained in the REAL ID Act. The Great Writ, as protected by the Suspension Clause, necessarily includes the power to excuse procedural errors to cure a miscarriage of justice.

## I

As the Supreme Court itself had noted, there is a dearth of case law on the adequacy of a substitute for habeas, reflecting "the care Congress has taken throughout our Nation's history to preserve the writ and its function." <u>Boumediene v. Bush</u>, 553 U.S. 723, 773 (2008). In <u>Felker v. Turpin</u>, 518 U.S. 651 (1996), the Court held that limitations on second or successive petitions contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") were "well within the compass" of the doctrine of "abuse of the writ," a "complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." <u>Id.</u> at 664. Other cases on habeas substitutes provide "little guidance" because the statutes at issue in those cases "were attempts to streamline habeas corpus relief, not to cut it back." <u>Boumediene</u>, 553 U.S. at 773

(citing <u>Swain v. Pressley</u>, 430 U.S. 372 (1977), and <u>United States v. Hayman</u>, 342 U.S. 205 (1952)).[1]

However, the Court has identified several "uncontroversial" "requisites for an adequate substitute for habeas corpus." <u>Boumediene</u>, 553 U.S. at 779. First, a prisoner must be afforded "a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." <u>Id.</u> Second, "the habeas court must have the power to order the conditional release of an individual unlawfully detained." <u>Id.</u> And "depending on the circumstances, more may be required." <u>Id.</u> Gonzalez-Alarcon's circumstances demand more.

The scope of habeas review, the Court explained, "in part depends upon the rigor of any earlier proceedings." <u>Id.</u> at 781. If habeas "relief is sought from a sentence that resulted from the judgment of a court of record . . . , considerable deference is owed to the court that ordered confinement." <u>Id.</u> at 782. In such cases, "the prisoner should exhaust adequate alternative remedies before filing for the writ in federal court." <u>Id.</u> In contrast, if "a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing." <u>Id.</u> at 783. Executive detention orders and review procedures lack "a tribunal disinterested in the outcome and committed to procedures designed to ensure its own independence." <u>Id.</u> Under these conditions, a "habeas court must

---

[1] In <u>Hayman</u>, the Court upheld a prior version of 28 U.S.C. § 2255, which replaced traditional habeas review for federal prisoners with a process allowing for a motion to be filed in the sentencing court. 342 U.S. at 207 n.1, 219. In <u>Swain</u>, the Court upheld a statute, patterned after § 2255, that transferred collateral review from the U.S. District Court for the District of Columbia to the D.C. Superior Court. 430 U.S. at 374-78.

2

have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." Id. Although the Court cautioned that an adequate substitute need not "duplicate § 2241 in all respects," it concluded the tribunals at issue in that case were inadequate. Id. at 792.

Like the Supreme Court, this circuit has said relatively little about the Suspension Clause. In assessing whether AEDPA's limitations period violates that provision, we noted that "[t]here may be circumstances where the limitation period at least raises serious constitutional questions and possibly renders the habeas remedy inadequate and ineffective." Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). But we held that such circumstances were not present because "§ 2244(d) is not jurisdictional and as a limitation may be subject to equitable tolling," and the petitioner did not argue "that a constitutional violation has resulted in the conviction of one who is actually innocent." Id.; see also Fisher v. Gibson, 262 F.3d 1135, 1145 (10th Cir. 2001) (rejecting AEDPA Suspension Clause argument because petitioner had not "claimed due process violations have resulted in the erroneous conviction of an innocent man").[2] Other circuits have similarly held that AEDPA's restrictions are

_____

[2] To determine if a petitioner may rely on the "savings clause" of § 2255(e), we ask "whether a petitioner's argument challenging the legality of his detention could have been tested in an initial § 2255 motion. If the answer is yes, then the petitioner may not resort to the savings clause and § 2241." Prost v. Anderson, 636 F.3d 578, 584 (10th Cir. 2011). Although both the savings clause and Suspension Clause analyses use the term "adequate," we considered savings clause and Suspension Clause arguments separately in Abernathy v. Wandes, 713 F.3d 538, 551, 555 (10th Cir. 2013). We noted that the test set forth in in Prost as to the savings clause was a "matter of statutory interpretation." Abernathy, 713 F.3d at 555. And we acknowledged that the Supreme Court applied a somewhat different test in Boumediene, at least in the context of executive detention. Id.

3

generally constitutional while leaving open the possibility that an as applied challenge could be successful for an individual claiming actual innocence. See Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1217 n. 3 (11th Cir. 2000) (collecting cases).

## II

Our consideration of actual innocence in assessing Suspension Clause claims is necessary. The Supreme Court has "consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." Hensley v. Mun. Court, 411 U.S. 345, 350 (1973). The writ "never has been a static, narrow, formalistic remedy." Jones v. Cunningham, 371 U.S. 236, 243 (1963). Instead, the writ's "capacity to reach all manner of illegal detention" and "its ability to cut through barriers of form and procedural mazes . . . have always been emphasized and jealously guarded by courts and lawmakers." Harris v. Nelson, 394 U.S. 286, 291 (1969). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." Id.

Based on these principles, the Court has held that a compelling showing of actual innocence will excuse both procedural default and untimeliness under AEDPA.

---

Further, jurisprudence regarding the savings clause is necessarily inapposite to the question of whether an alternative remedy is adequate to challenge executive detention if it lacks the fail-safe provisions of traditional habeas review. The savings clause is itself a fail-safe provision—one of several contained in § 2255—and thus, as a logical matter, cannot tell us whether a remedy without similar escape hatches is adequate.

4

McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). This doctrine is consistent with pre-AEDPA jurisprudence. Procedural default could be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986) (quotation omitted). Similarly, the doctrine of "abuse of the writ," under which courts could dismiss second or successive habeas petitions raising claims that could have been brought in an initial petition, gave way if "a constitutional violation probably has caused the conviction of one innocent of the crime." McCleskey v. Zant, 499 U.S. 467, 494 (1991).

These exceptions to various procedural obstacles developed in more recent times, but only because the obstacles themselves are of relatively recent vintage. In other words, the procedural doctrines and exceptions arose together. State prisoners were not permitted to file federal habeas petitions prior to 1867, with some limited exceptions, see Felker, 518 U.S. at 659-60, and thus there was no need for a state exhaustion doctrine at the time of the founding. The seminal Supreme Court case establishing that state prisoners may be required to exhaust state remedies before filing suit, Ex parte Royall, 117 U.S. 241 (1886), itself held that exhaustion may "be subordinated to any special circumstances requiring immediate action." Id. at 253. As to federal prisoners, the Supreme Court generally held that "habeas corpus is not to be made use of as a writ of error" and "the ordinary procedure for the correction of errors in criminal cases is by writ of error." In re Lincoln, 202 U.S. 178, 182 (1906).

5

But the Court also recognized there may "be special circumstances calling for a departure" from that general rule.  Id.

Similarly, in the first Supreme Court case using the phrase "abuse of the writ" in reference to habeas, the Court concluded that, even if a petitioner had prior knowledge of the facts underlying his new claim, the "petitioner may be able to present adequate reasons for not making the allegation earlier, reasons which make it fair and just for the trial court to overlook the delay."  Price v. Johnston, 334 U.S. 266, 291 (1948).  "The primary purpose of a habeas corpus proceeding is to make certain that a man is not unjustly imprisoned," the Court explained, "[a]nd if for some justifiable reason he was previously unable to assert his rights or was unaware of the significance of relevant facts, it is neither necessary nor reasonable to deny him all opportunity of obtaining judicial relief."  Id.  This flexibility derives from common law habeas, under which "the denial by a court or judge of an application for habeas corpus was not res judicata."  Sanders v. United States, 373 U.S. 1, 7 (1963).  In short, the habeas remedy at both common law and in its contemporary form unfailingly provided various safety valves to avoid true miscarriages of justice.  See Harris, 394 U.S. at 291.

To say that the habeas remedy has consistently been interpreted to provide some degree of flexibility is not to say that Congress is precluded from establishing reasonable limitations on its use.  See Felker, 518 U.S. at 664.  Some circuits have refused to permit resort to habeas for individuals who failed to raise an issue in a petition for review.  See, e.g., Muka v. Baker, 559 F.3d 480, 486 (6th Cir. 2009) ("Simply because the Mukas

6

failed to make a known argument during their prior proceedings does not mean that we must grant them a second bite at the apple to satisfy the Suspension Clause's requirements."); Mohamed v. Gonzales, 477 F.3d 522, 526 (8th Cir. 2007) (rejecting Suspension Clause challenge based on inability to advance new evidence in a petition for review because petitioner "could have introduced the [evidence] during the removal proceedings, on appeal to the Board (when he was represented by counsel), or through a motion to reopen"). But those cases did not involve citizenship claims.

For an individual detained by ICE, a citizenship claim is akin to the assertion of actual innocence which requires procedural barriers otherwise barring such claims to give way. That is, if we analogize the finding that Gonzalez-Alarcon is removable to a state court conviction, his plausible allegation of citizenship would show that he is not removable in the same way that a state prisoner might show he did not commit the crime of conviction. Notably, the actual innocence exception applies following a judicial determination of guilt. And if "a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing." Boumediene, 553 U.S. at 783. As the Supreme Court has said, the habeas remedy requires "the initiative and flexibility essential to insure that miscarriages of justice" are corrected as to prisoners following conviction. Nelson, 394 U.S. at 291. It follows that the writ, by its "very nature," demands the same for those detained by bare executive authority. Id.

To continue the state court analogy, the REAL ID Act's barriers to review could be treated as a time bar (Gonzalez-Alarcon failed to file a timely petition for

7

review) or a procedural bar (he failed to present his claim and related evidence in administrative proceedings). In either event, a compelling showing of actual innocence would provide a gateway through which to present a habeas claim. The actual innocence or miscarriage of justice exception has been applied to overcome a variety of procedural hurdles, including "successive petitions asserting previously rejected claims, abusive petitions asserting in a second petition claims that could have been raised in a first petition, failure to develop facts in state court, and failure to observe state procedural rules, including filing deadlines." Perkins, 133 S. Ct. at 1931-32 (quotations and citations omitted). Further, "unjustifiable delay on a habeas petitioner's part" is "not as an absolute barrier to relief," but may be treated "as a factor in determining whether actual innocence has been reliably shown." Id. at 1928; see also Lopez v. Trani, 628 F.3d 1228, 1230-31 (10th Cir. 2010) ("[A] sufficiently supported claim of actual innocence creates an exception to procedural barriers for bringing constitutional claims[] regardless of whether the petitioner demonstrated cause for the failure to bring these claims forward earlier.").

The Court has not yet decided whether a prisoner may assert a "freestanding claim of actual innocence." Perkins, 133 S. Ct. at 1931. Instead, it has treated actual innocence as a gateway through which prisoners may pursue otherwise barred constitutional claims. Id. In this instance, Gonzalez-Alarcon's allegation that he is a citizen is itself a constitutional claim. Lack of jurisdiction to detain has always been a basis for habeas relief. "Originally, criminal defendants whose convictions were final were entitled to federal habeas relief only if the court that rendered the judgment under

8

which they were in custody lacked jurisdiction to do so." Danforth v. Minnesota, 552 U.S. 264, 271 (2008) (citing Ex parte Siebold, 100 U.S. 371, 376-377 (1880); Ex parte Lange, 18 Wall. 163, 176 (1874); Ex parte Watkins, 3 Pet. 193 (1830)); see also Wandes, 713 F.3d at 554 (noting that habeas corpus as it existed at the time of the founding was available "to inquire whether a committing court had proper jurisdiction" (quoting Swain, 430 U.S. at 385 (Burger, C.J., concurring)). And as noted in the majority opinion, ICE clearly lacks jurisdiction to detain or remove a United States citizen. Ng Fung Ho v. White, 259 U.S. 276, 284 (1922). Moreover, executive detention and removal of a citizen "obviously deprives him of liberty" and thus "[a]gainst the danger of such deprivation without the sanction afforded by judicial proceedings, the Fifth Amendment affords protection in its guarantee of due process of law." Id. at 285.

**III**

Because Gonzalez-Alarcon's allegation of United States of citizenship closely mirrors an assertion of actual innocence, which habeas law has consistently recognized as permitting an exception to otherwise applicable procedural impediments, his Suspension Clause challenge must be assessed with respect to his present ability to obtain relief under the REAL ID Act rather than any prior forfeited opportunities.